COMMONWEALTH vs. ARTHUR A. FANCY & another.

Middlesex.   March 1, 1965. — May 4, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Larceny. Conspiracy. Firearms. Search and Seizure. Evidence,* Illegally seized material, Presumptions and burden of proof, Consciousness of guilt, Admissions and confessions. *Practice, Criminal,* Trial of indictments together, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Arrest. Prisoner. Words,* "Place."

Conviction of a defendant of stealing and conspiring to steal liquor was not warranted by evidence showing merely that a trailer containing cases of the liquor, which had been parked on the premises of a transportation company on its arrival from another State one day, was seen in the evening of that day parked near a café in another city, that the defendant and others were at the café that evening, that some of the cases of liquor were missing from the trailer the next day, that a few days later the defendant was present in another person's apartment where some bottles of the liquor and some cases marked like those in the trailer were found, and that upon being questioned the defendant gave a false name [200]; nor was conviction on like charges warranted with respect to another defendant who had been with the others at the café on the evening in question but had not been present later in the apartment when the bottles and cases were found, and who was living in a lodging house under a false name.   [201]

On a motion by the defendant in a criminal case to suppress evidence as illegally obtained, the burden is on the defendant to establish the illegality.   [202]

A motion by the defendant in a criminal case to suppress an article found in a search conducted pursuant to a search warrant was properly denied where the defendant failed to show any invalidity in the warrant. [202–203]

G. L. c. 276, § 1, as amended through St. 1947, c. 93, authorized issuance of a warrant to search an automobile.   [203–204]

Conviction of a defendant of a violation of G. L. c. 269, § 10, by carrying a firearm under his control in a vehicle was warranted by evidence that in a locked automobile of the defendant opened with his keys there was discovered a revolver with cartridges in its chambers, which was introduced as an exhibit at the trial, and that the defendant admitted that he was the only one who used the automobile [204]; and the judge properly left it to the jury to determine whether the revolver was a "firearm" within the statute [204].

On the record, there was no abuse of discretion in denial of a motion, by a defendant indicted for carrying a firearm under his control in a vehicle contrary to G. L. c. 269, § 10, for a trial of that indictment separate from an indictment against him for receiving stolen goods and from indictments against other defendants for stealing and conspiracy to steal.   [204–205]

Certain statements made by the defendant in a criminal case while under arrest at a police station were not rendered inadmissible at his trial on the ground that the statements were unequivocal denials of accusations; nor was basis shown for contentions that the statements should have been excluded under *Escobedo* v. *Illinois,* 378 U. S. 478, or for violation of G. L. c. 276, § 33A.   [205–206]

INDICTMENTS found and returned in the Superior Court on June 5, 1963.

A motion to suppress evidence was heard by *Paquet,* J. A motion for severance was heard by *Tomasello,* J., and the indictments were tried before him.

*Ronald J. Chisholm* for the defendants.

*Dante J. DeMichaelis,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

SPALDING, J.

## I.   THE FANCY AND MALONEY INDICTMENTS.

Arthur A. Fancy and William F. Maloney, together with three other defendants (with whom we are not here concerned) were indicted for the larceny on May 15, 1963, of 835 cases of liquor.[1]   Fancy and Maloney were also indicted with the other defendants for conspiracy to commit larceny.   The jury returned verdicts of guilty under the larceny and conspiracy indictments.[2]   Fancy and Maloney (defendants) were sentenced on both indictments. In accordance with G. L. c. 278, §§ 33A–33G, they have appealed, assigning as error the denial of their motions to suppress, their motions for severance, and their motions for directed verdicts.   The defendants also assign as error

---

[1] The three other defendants were William J. Zampell, Thomas O'Connell, and James F. Meara.

[2] Fancy and Maloney were also indicted for receiving stolen property but on these indictments they were acquitted.

the admission of certain evidence. The above mentioned indictments were tried with two indictments against Norman P. MacDonald. In one he was charged with receiving stolen property; in the other he was charged with carrying "under his control in a motor vehicle a certain firearm, to wit, a revolver."

We consider first the denial of the defendants' motions for directed verdicts. In doing so we assume, without deciding, that all questions touching the admissibility of evidence would be resolved in favor of the Commonwealth. The evidence in its aspect most favorable to the Commonwealth showed the following: On May 14, 1963, a customs warehouse officer in New York checked a trailer (No. L4530) owned by the M & M Transportation Company (M & M), which was scheduled to go to Massachusetts. Eight hundred thirty-five cases of whisky had been placed on the trailer. The boxes were numbered and had "Cutty Sark Scotch whisky" printed on them. After the cases were loaded, the door was closed and the customs officer affixed a customs seal numbered A–151473.

The following day the trailer arrived in Massachusetts and was parked on M & M's lot on Mystic Avenue, Somerville. The trailer was inspected three times that day; the latest check was at 4:45 P.M. At that time the seal was intact. At no time on May 15 was anyone authorized to take the trailer from the premises. On the evening of the same day, the trailer was seen in Everett, it having been parked near the Twin's Cafe.

At about 10:30 P.M., five men entered Twin's Cafe. The bartender on duty at that time was Richard Peterson. The men, only one of whom Peterson recognized, were William J. Zampell, Thomas O'Connell, James F. Meara, and the defendants Fancy and Maloney. All of them engaged in conversation at one end of the bar. At one point, the defendants left and then returned. Peterson never saw the five men leave, either in a group or individually. But he was aware that they all were gone at about 11:45 P.M. When Peterson closed and left the cafe at 12:05 A.M., he noticed the trailer was not where it previously had been.

Two police officers, who were on duty in Everett, watched the trailer from 2:10 A.M. until 4:45 A.M. There was no seal on the latch. One of the officers opened the door and detected an alcoholic odor. Obliterated footprints were seen behind the truck by an F. B. I. agent who had also arrived. At about 4 A.M. a black sedan with a white streak on a rear fender was seen proceeding slowly by the trailer.

The trailer remained parked within 200 feet of Twin's Cafe until 7:30 A.M., when it was driven back to M & M's Somerville lot by one of its employees. At about 8 A.M. a freight claims agent discovered that there were only 763 cases on the truck. On May 20, 1963, a delivery of 763 cases of Cutty Sark whisky was made to Whitehall Liquors, the consignee of the shipment. The truck driver recorded the numbers on the cases and these numbers came within the range of those on the boxes constituting the shipment from New York.

About 1:20 P.M. on May 21, 1963, Somerville police officers went to the residence of James F. Meara, 47A Tufts Street, and they were admitted by Meara. Fancy and Norman P. MacDonald were there. When questioned, Fancy gave a false name. Both he and MacDonald were put under arrest. Meanwhile, Officer Collins went to the Somerville District Court and obtained a search warrant. When he returned to 47A Tufts Street, Fancy and MacDonald had already been taken to the police station. The search which followed uncovered six full bottles, a half a bottle and one empty bottle of Cutty Sark whisky. These were found in a closet in Meara's apartment. Two wooden cases were also found which had the same markings as those on the M & M trailer. Their numbers fell within the range of numbers on the cases which had been shipped from New York. On June 2, 1963, Maloney was arrested at 71 Perkins Street, Somerville.

On the afternoon of May 21 Officer Powers investigated a 1953 black Buick which was parked a short distance from 47A Tufts Street. In the vehicle, which was locked, he saw nails and pieces of wood on the rear floor. He caused the car to be towed to a garage. About nine o'clock the next

morning, he searched the car at the garage. It was still locked, but he had obtained keys to open it at the police station from MacDonald's property envelope. Upon opening the car, Powers found wood samples. Under the driver's seat, he also found a revolver with two cartridges in it.

An analysis of the evidence discloses only two circumstances from which an inference might be drawn that Fancy committed or conspired to commit the larceny charged: the episode at Twin's Cafe, and his presence at Meara's apartment where some of the Cutty Sark was found. We are of opinion that this was not enough.

We are aware of the presumption against a defendant who, without a satisfactory explanation, has in his possession recently stolen goods. See *Commonwealth* v. *Grace,* 265 Mass. 119, 124; *Commonwealth* v. *Torrealba,* 316 Mass. 24, 29; *Commonwealth* v. *Brant,* 346 Mass. 202, 205. But it was never established that Fancy ever had any of the Cutty Sark whisky in his possession. The evidence shows only that he was a visitor at an apartment where the liquor was found. We are also mindful that "[i]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime." *Commonwealth* v. *Leach,* 156 Mass. 99, 101–102. It is, however, equally well established that "if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foundation in established facts, a verdict of guilty cannot stand." *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. *Commonwealth* v. *Carter,* 306 Mass. 141, 147. *Commonwealth* v. *Smith,* 342 Mass. 180, 183. In the case at bar, it can readily be inferred that Fancy associated with persons who committed the larceny, but this does not justify the inference that he participated in the crime. A contrary holding would be tantamount to introducing into our law a doctrine of guilt by association, a policy which we decline to adopt.

The Commonwealth makes much of the point that there is evidence of consciousness of guilt. As stated above, when Fancy was arrested, he gave a false name. Evidence of this sort constitutes an implied admission which may, with other evidence, be sufficient to prove guilt. *Commonwealth* v. *Curry,* 341 Mass. 50, 55. *Commonwealth* v. *Swartz,* 343 Mass. 709, 713. *Commonwealth* v. *Connors,* 345 Mass. 102, 105. But standing alone it is not enough. An implied admission of this sort "may turn the scale where the evidence is conflicting. But it forms an insufficient foundation for the erection of an entire case by mere inference without other evidence." *Credit Serv. Corp.* v. *Barker,* 308 Mass. 476, 481. See *Commonwealth* v. *Smith,* 342 Mass. 180, 184; *Hillery* v. *Hillery,* 342 Mass. 371, 375. Here, the "other evidence" was insufficient. Moreover, the weight to be attributed to the admission is weakened considerably by the fact that Fancy had at least one other motive for concealing his identity, for at that time there was outstanding a warrant for his arrest on a nonsupport charge.

The Commonwealth's case against Maloney was even weaker. He was not present when Fancy and MacDonald were arrested at 47A Tufts Street, the place where some of the Cutty Sark whisky was found. The only evidence linking him to the crime consisted of the following: He had visited Twin's Cafe the night of the crime with all of the defendants except MacDonald. At one point he and Fancy left and returned. Maloney had been seen at the M & M Transportation Company in the month of February. As with Fancy, there was some evidence of consciousness of guilt.[1] For the same reasons detailed above in our discussion of the Commonwealth's case against Fancy, Maloney's motions for directed verdicts under both the larceny and the conspiracy indictments should have been granted.

The judgments are reversed and the verdicts are set aside.

*So ordered.*

---

[1] At the time of his arrest he was living at a lodging house where he had registered under an assumed name. But the weight to be attributed to this fact must be considered with the fact that at that time a warrant for his arrest on nonsupport was outstanding against him.

## II. The MacDonald Indictment.

Norman P. MacDonald (defendant) was found guilty under an indictment charging a violation of G. L. c. 269, § 10, which reads in material part: ''Whoever . . . carries . . . under his control in a vehicle, a firearm, . . . loaded or unloaded, . . . shall be punished by imprisonment . . . .'' The defendant has appealed pursuant to G. L. c. 278, §§ 33A–33G, and assigns as error the denials of his motions to suppress, for a directed verdict, and for a severance. Various questions relating to rulings on evidence and the judge's instructions have also been raised.

The defendant's motion to suppress was properly denied. The evidence introduced at the pre-trial hearing in its aspect most favorable to the Commonwealth was as follows: The defendant visited an apartment at 47A Tufts Street, Somerville, at about 1 p.m. on May 21, 1963. He was in the company of James F. Meara and Arthur A. Fancy, two of the six defendants at the trial. When he arrived, he parked his car on the right hand side of Tufts Street, outside Meara's house. Officer Gleason arrested MacDonald at the apartment approximately one-half hour later. At about 4 p.m. that same day, Officer Powers saw the defendant's motor vehicle, a Buick, parked on Tufts Street. The car was locked and no attempt to open it was made. Powers at that time did not have a search warrant. On the following day, Officer Powers went to Vitt's Garage on Somerville Avenue, where the car had been taken. The car was opened with the defendant's keys and four police officers searched the interior, including the trunk. A revolver with two cartridges in it was found under the driver's seat.

On a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party. *Chin Kay* v. *United States,* 311 F. 2d 317 (9th Cir.). *Addison* v. *United States,* 317 F. 2d 808, 812 (5th Cir.), cert. den. 376 U. S. 905. *Murray* v. *United States,* 333 F. 2d 409 (10th Cir.). See *Nardone* v. *United States,* 308 U. S. 338. Here the defendant failed to introduce evidence indicating

that the search was not made pursuant to a valid warrant. Indeed, it appeared at a voir dire conducted during the subsequent trial that a search warrant had been secured. The judge conducting the pre-trial hearing to suppress seems to have assumed, as he could have, that the search of the automobile was made pursuant to a warrant and he denied the motion on the ground that the defendant had not sustained his burden of proving that the warrant was invalid. There was no error.

The defendant contends, however, that there is no authority under our law to search a motor vehicle. He relies on the absence of a specific reference to motor vehicles in G. L. c. 276, § 1 (as amended through St. 1947, c. 93), which refers only to "a particular house or place" and the fact that a subsequent amendment, St. 1963, c. 96, § 1 (enacted after the search), expressly included motor vehicles.[1] We disagree.

Use of the word "place" in the statute calls for a broad construction. See *Commonwealth* v. *Jones,* 142 Mass. 573, 574–575, where, under a statute prohibiting the sale of intoxicating liquor in "any building or place . . . within four hundred feet of . . . a public school" the term "place" was construed to include "a tent, booth, excavation in the ground, or something similar." In *Commonwealth* v. *Berwick,* 346 Mass. 5, although the point was not singled out for discussion, it was impliedly held that a warrant to search a motor vehicle could be issued under a similar statute. The statute in that case (G. L. c. 271, § 23) authorized the issuance of warrants to search or seize gaming apparatus in a "house, building, room or place."

It is hardly likely that a legislative policy permitting searches of homes, the citadels of privacy, would not also

---

[1] General Laws c. 276, § 1 (as amended through St. 1947, c. 93), reads in relevant part: "A . . . justice of the peace authorized to issue warrants in criminal cases may, upon complaint on oath that the complainant believes that . . . property or articles . . . are concealed in *a particular house or place,* if satisfied that there is reasonable cause for such belief, issue a warrant to search . . ." (emphasis supplied). Statute 1964, c. 557, § 1, replaced the entire section. The reference now is to "vehicles," rather than "motor vehicles," as provided in St. 1963, c. 96.

embrace the search of automobiles. The 1963 amendment which added the words "motor vehicle" was merely clarifying legislation; it made explicit that which was implied.

The defendant also assigns as error the denial of his motion for a directed verdict. We find no error. From the evidence that the revolver with cartridges in its chambers was discovered in the defendant's car, that the locked car was opened with his keys, and his admission that "I am the only one that uses that car," the jury could properly infer that he had carried a firearm "under his control in a vehicle." There is nothing to the defendant's argument that the Commonwealth never established that the revolver was a firearm. The pistol and cartridges were introduced into evidence. The jury could have found, without the aid of expert testimony, that the gun was capable of discharging a bullet as required by G. L. c. 140, § 121. The instructions to the jury were correct on this point. The judge properly charged ". . . you may draw your own conclusion from the appearance thereof whether or not it is a firearm, it being an exhibit in the case."

The defendant contends that the denial of his motion for a severance with respect to the firearm indictment was reversible error. But the "determination in such a case as to whether the defendants' or the Commonwealth's substantial rights will be prejudiced by consolidation or severance for trial rests in the sound discretion of the judge." *Commonwealth* v. *Iannello,* 344 Mass. 723, 727. *Commonwealth* v. *Bingham,* 158 Mass. 169, 171. *Commonwealth* v. *Seeley,* 167 Mass. 163, 166. *Commonwealth* v. *Gallo,* 275 Mass. 320, 328. *Commonwealth* v. *Millen,* 289 Mass. 441, 459–460, cert. den. sub nom. *Millen* v. *Massachusetts,* 295 U. S. 765. The exercise of this discretion is not limited to the situation where a defendant seeks to have a separate trial apart from that of other defendants. It is also within the judge's discretion as to whether a single defendant should be tried for several offences at the same trial. *Commonwealth* v. *Rosenthal,* 211 Mass. 50, 54. *Commonwealth* v. *Slavski,* 245 Mass. 405, 411–412. *Commonwealth* v. *D'Amico,* 254 Mass. 512, 514.

Commonwealth *v.* Fancy.

We cannot say the judge's denial of the defendant's pretrial motion was an abuse of discretion. There were grounds for the conclusion that evidence relevant to the offence of carrying a firearm was related not only to the indictment against MacDonald for receiving stolen property but also to the indictments against the other defendants.

The defendant also assigns as error the admission of certain statements made by him while at the police station.[1] His conduct indicated a consciousness of guilt and an admission that he owned and was in control of the vehicle from which the firearm had been taken. His behavior and replies to questions could hardly, as the defendant argues, be considered "unequivocal denials." See *Commonwealth v. Gangi,* 243 Mass. 341, 345; *Commonwealth* v. *Burke,* 339 Mass. 521, 532.

Other grounds have also been advanced for the exclusion of this evidence. One is based on the purported denial of the defendant's rights under the recent case of *Escobedo* v. *Illinois,* 378 U. S. 478. Another rests on an alleged violation of G. L. c. 276, § 33A, as amended through St. 1960,

---

[1] The testimony of Officer Gleason was as follows: "I had some conversation with MacDonald on the following morning which would have been May 22 at about 9:30 in the morning, or sometime before he went to Court, around that time. I brought . . . MacDonald into my office, and I showed him a gun, and I said to him . . . 'Did you ever see that before?' He said, 'No.'

"Well, I said, 'This gun was taken out from under the front seat of your automobile.' With that, he put his hand up to his face, like that, rubbed his head . . . .

"He had expressions of nervousness and anger. . . . I said, 'Do you let anybody use your car?' He said, 'No.' I said, 'Has anybody else besides you driven that car within the past two weeks?' He said, 'No.' I said, 'Within the past three weeks?' He said, 'No.' I said, 'Nobody uses that car besides you?' He said, 'I am the only one that uses that car.'"

Officer Powers's testimony concerning this conversation between Gleason and MacDonald was as follows: ". . . 'we just found this revolver under the driver's seat of your car Norman.' And he put both his hands up to his face and said, 'Oh, Jesus, now I am in it.' And he said, 'I know . . . nothing about that gun. . . .'

"And . . . [Gleason] said, 'Well, it is your car,' and MacDonald said, 'That is right.' He said 'Well, have you let anyone take it lately?' And MacDonald said, 'What do you mean lately?' . . . [Gleason] says, 'In the last three weeks?' He said 'No, sir, I have had the keys, and I have had control of that car for the last three weeks.'"

c. 269.[1]   (See the intimation in *Commonwealth* v. *Bouchard,* 347 Mass. 418, 420–421).   But there is no basis in the record for these contentions.   The fact that the defendant asserted in his motion to strike that ". . . [the defendant] hadn't been informed of any rights or anything of that nature" and has argued these issues does not establish a record upon which these rights, whatever they may be, can be grounded.   See *People* v. *Farrara,* 46 Cal. (2d) 265, 268–269.   There were extended voir dires at the trial as well as at the pre-trial hearings on motions to suppress, at which the defendant was afforded an ample opportunity to lay the foundation for these questions, if he had chosen to do so.

Finally, the defendant has argued that the evidence just discussed was tainted by an unreasonable search and seizure.   See *Commonwealth* v. *Palladino,* 346 Mass. 720, 724. Since, as we have held, the defendant has not sustained his burden of establishing that the search was unlawful, this contention must fail.

*Judgment affirmed.*

---

[1] This section provides that "The police official in charge of the station . . . having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney.   Any such person shall be informed of his right to so use the telephone immediately upon being booked, and such use shall be permitted within one hour thereafter."   A 1963 amendment, St. 1963, c. 212, changed the last sentence so that a detained person must be informed of his right "forthwith upon his arrival at such station."   This amendment was not in effect at the time of MacDonald's conversation.