COMMONWEALTH *vs.* BRUCE C. GEARY.

Suffolk. March 6, 1967. — April 27, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Admissions and confessions. *Practice, Criminal,* Trial of indictments together. *Pleading, Criminal,* Indictment. *Homicide.*

On the record of a criminal case, there was no merit in a contention by the defendant, made for the first time in this court, that a statement by him to police in the presence of his counsel after he had been advised of his constitutional rights was involuntary and should have been excluded at his trial. [430]

The judge in a criminal case followed the established Massachusetts practice of holding a voir dire with respect to an alleged confession of the defendant and then, after determining that the confession was voluntary and admitting it in evidence, of leaving to the jury the question of its voluntariness. [430–431]

The disposition of a motion by a defendant in a criminal case for a trial separate from that of another defendant was within the discretion of the court. [431]

There was no error in a criminal case in refusing to dismiss an indictment in the statutory form supplemented by ample particulars. [431]

Commonwealth *v.* Geary.

Evidence in a murder case warranted a finding that the defendant was guilty of second degree murder by stabbing the victim during an affray outside a nightclub. [431]

INDICTMENT found and returned on June 30, 1965.

The case was tried in the Superior Court before *Smith,* J.

*Joseph P. McParland* for the defendant.

*Lawrence L. Cameron,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Geary was indicted and tried with one Wood for the second degree murder[1] of one Leamon Mincey. Verdicts of guilty against both men were returned. Geary's appeal is before us under G. L. c. 278, §§ 33A–33G, as amended. On somewhat conflicting evidence the following facts could have been found.

About 10:30 P.M. on Saturday, April 17, 1965, Leamon Mincey with his wife and fourteen or fifteen friends (some of whom had come with him that day from New York) entered Basin Street South, a nightclub on Washington Street in Boston. Leamon and his cousin John Mincey, both of whom had been drinking, stopped about 11:45 P.M. near the stage to look at the floor show. Geary and Wood had seats at the bar. The Minceys blocked their view. John Mincey declined to move upon request, but soon returned to his own table. The Minceys and their friends left the nightclub about midnight, the closing time.

Just after John Mincey emerged from the nightclub, he was pushed by two or three men. A struggle ensued. John fell to the ground, received kicks in the face and elsewhere, and was wounded in the hand by a knife. Leamon, who had left the club ahead of John, came back to John's assistance. He was stabbed in the chest with a knife. From this knife stab, he died about 12:20 A.M.

On May 1, 1965, at the request of the Boston police, John and two friends, Paul and Gordon Jackson, returned to Boston. All of them lived in New York. The Jacksons

---

[1] Geary was also charged separately with assault with a dangerous weapon and assault and battery upon one John Readis Mincey. No appeal with respect to these offences is now before us.

had been in the group present on April 17. With police officers, they went over a large number of photographs but were not able to make any identification. That evening police officers took John Mincey and Paul Jackson on a tour of nightclubs in the area near Basin Street South. While sitting in front of that club, they saw Wood, Geary's codefendant, with a girl. The police took Wood to the police station. Wood was identified by John Mincey and by Paul Jackson.

At the trial, Wood was described as having had a knife during the fighting on April 18. Geary also was identified at the trial. He, however, was not observed by the identifying witnesses as having had a knife on April 18, although he himself testified that he had been handed one by a bystander not named.

After Wood was taken into custody on May 1, a police investigator working on the case, at the request of a Mr. Kantrovitz, who then represented Geary, attended on May 4 a conference at the district attorney's office. There were also present Geary, his then attorney, two officers attached to the district attorney's office, and a police stenographer. Geary was warned of his constitutional rights. Mr. Kantrovitz stated that ''Geary [had] authorized . . . [him] to accompany him to the District Attorney's office for the purpose of making a voluntary disclosure and surrender.''

At the trial, the judge conducted a voir dire in the absence of the jury with respect to the disclosures then made by Geary. He concluded that Geary's statement ''was voluntarily made in the presence of counsel at an interview requested by . . . [Geary] himself.''

In the statement, Geary admitted (a) that he participated in the fight outside the Basin Street South club; (b) that outside the club he saw two men, one of whom bumped him; (c) that this was the man whom he had earlier asked to move inside the club; (d) that a bystander passed Geary a knife; (e) that the man ''rushed'' Geary, and Geary ''struck back''; (f) that he was not sure that he ''had stabbed him''; and (g) that he ''immediately fled'' and ''threw away the knife.'' Geary stated also that he had learned that Wood

had been "arrested for the murder," of which (so Geary then said) Wood was innocent, and that he (Geary) had "expressed a readiness to turn . . . [himself] in on the advice of . . . [his] lawyer." Geary's testimony, when he took the stand, was similar in effect. Wood's testimony, in general, was that he himself was inside the club when the stabbing took place.

Geary, through his present counsel, makes very limited arguments (without the citation of supporting authority) with respect to (a) the admission in evidence of the statement given by him to the police, (b) the denial of certain pre-trial motions, (c) one evidential ruling of the trial judge, and (d) the judge's charge and failure to give certain requested instructions. The arguments are without merit and constitute meager compliance with Rule 13 of the Rules for the Regulation of Practice before the Full Court, 345 Mass. 787.[2]

1. Geary's statement to the police was made at his own request, in the presence of his own attorney, after warning by the police and his own attorney of his constitutional rights. It is argued, without evidential support, that "the statement given, although nominally . . . in front of numerous witnesses and counsel, was in fact given out of fear and against . . . [Geary's] will." This contention apparently rests on the circumstances that Geary was sent to Mr. Kantrovitz by Wood's mother to whom Geary talked after Wood's arrest and that she or her husband called Mr. Kantrovitz. Geary now says that he would not have confessed if he had picked out a lawyer for himself. No dissatisfaction with Mr. Kantrovitz on May 4, 1965, is apparent. This argument, which in any event is without substance, against admitting the confession was not made at the voir dire. It appears to be an afterthought now raised for the first time. See *Commonwealth* v. *Smith,* 342 Mass. 180, 188; *Commonwealth* v. *Cook,* 351 Mass. 231, 237.

The judge's instructions concerning Geary's statement complied with our requirements. See *Commonwealth* v.

---

[2] See S. J. C. Rule 1: 13 (1967), effective June 1, 1967.

*Marshall,* 338 Mass. 460, 461–462; *Commonwealth* v. *Rogers,* 351 Mass. 522, 530; *Jackson* v. *Denno,* 378 U. S. 368, 378–391. The trial took place December 7–17, 1965, before the decision of *Miranda* v. *Arizona,* 384 U. S. 436 (June 13, 1966). It is likely (although we need not decide the issue) that the police conduct in this case would not have violated the principles of the *Miranda* case. That case, however, is not applicable retrospectively. *Johnson* v. *New Jersey,* 384 U. S. 719, 726–735. See the *Rogers* case, *supra,* at pp. 530–531.

2. Denial of Geary's motion to sever his trial from that of Wood was within the limits of a sound judicial discretion. *Commonwealth* v. *Fancy,* 349 Mass. 196, 204–205. Examination of the transcript reveals no prejudice to Geary as a consequence of trying him and Wood together.

3. The vague suggestions in Geary's brief of other violations of his constitutional rights present no real issue. See *Guerin* v. *Commonwealth,* 339 Mass. 731, 733. There was no error in refusing to dismiss the indictment which was in form consistent with G. L. c. 277, § 79. Ample particulars were furnished. The denial of other motions by Geary was within the limits of the trial judge's discretion. See *Commonwealth* v. *Ladetto,* 349 Mass. 237, 244–245; *Commonwealth* v. *Balliro,* 349 Mass. 505, 518.

4. Geary did not claim (as did Wood's attorney) an exception to the judge's wholly reasonable action limiting the cross-examination of John Mincey on an irrelevant matter.

5. There was evidence which would warrant the jury in finding that Geary and Wood in attacking Leamon and John Mincey were engaged, even if briefly, in a common enterprise. Even if no such common enterprise had been found, there was abundant evidence upon which Geary could have been found guilty of murder. The facts were clearly left to the jury to determine. Instructions requested and denied were too broadly expressed. The judge's charge, viewed as a whole, was adequate.

6. Other assignments of error have not been argued or require no comment.

*Judgment affirmed.*