COMMONWEALTH *vs.* ALBERT LEWIN (NO. 2).

Suffolk. April 2, 1990. - June 12, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Evidence*, Admissions and confessions, Judicial discretion. *Practice, Criminal*, Judicial discretion.

In a criminal case, the judge correctly exercised his discretion to exclude a certain ambiguous statement of the defendant that was neither a confession nor an admission, where the judge properly concluded that the prejudicial effect the statement might have on the jury outweighed any probative value on the issue of guilt. [631-632]

INDICTMENTS found and returned in the Superior Court Department on May 11, 1988.

A pretrial motion to suppress evidence was heard by *John J. Irwin, Jr.*, J.

An application for an interlocutory appeal was allowed by *O'Connor*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him.

*Thomas J. Mundy, Jr.*, Assistant District Attorney (*Julie W. Heflin*, Assistant District Attorney, with him) for the Commonwealth.

*Max D. Stern* (*Patricia Garin* with him) for the defendant.

GREANEY, J. This is the Commonwealth's appeal from an order of the Superior Court judge assigned the trial of this first-degree murder case. The order allowed the defendant's pretrial motion to exclude from evidence in the trial a statement allegedly made by him to two Suffolk County court officers. A single justice of this court allowed the Commonwealth's request for an interlocutory appeal in view of the other appeals from various orders pertaining to the case

which were already pending here. See Mass. R. A. P. 15 (c), 365 Mass. 859 (1974).

The facts found by the judge are as follows. The defendant was arrested for murder and other offenses arising in connection with the fatal shooting of a Boston police officer during the execution of a "no-knock" search warrant at 104 Bellevue Street, Dorchester, on February 17, 1988. After a probable cause hearing in the Brighton District Court on March 9, 1988, the defendant was detained in a holding cell in the lockup area of the courthouse. While so detained, he approached Court Officers Michael McManus and Paul O'Neill and asked to talk to the assistant district attorney. Officer McManus replied that he could not talk to the assistant district attorney because his own attorney was not present. The defendant then said, in substance, "Tell them I'll plead guilty to manslaughter. I don't give a shit what happens to me. They can kill me. I don't care."

The court officers did not notify the assistant district attorney of the defendant's statement until December 14, 1988. The following day, they gave tape-recorded statements detailing the circumstances of the incident.

The defendant moved for an order in limine excluding testimony by the court officers about his statement. After a pretrial hearing, the judge allowed the defendant's motion and excluded the evidence on two grounds which he explained in a written memorandum of decision. First, the judge concluded that, under Mass. R. Crim. P. 12 (f), 378 Mass. 870 (1979), which declares inadmissible evidence of pleas, offers of pleas, and related statements, the defendant's utterances constituted a statement made in connection with a possible plea bargaining offer, and, as such, could not be admitted in evidence. Second, the judge also concluded, in an exercise of discretion, that, because the probative value of the evidence was clearly outweighed by its likely prejudicial effect, the statement should be excluded. We need not consider the first ground for exclusion, based on the possible application of the provisions of rule 12 (f), because the judge's ruling is a

proper exercise of his discretion on the second ground relied upon by him.

We have consistently held that a judge has discretion to exclude a particular piece of evidence if the judge concludes that the probative worth of the evidence is outweighed by the prejudicial effect it may have on the jury. See *Commonwealth* v. *Harvey*, 397 Mass. 351, 358-359 (1986); *Commonwealth* v. *Jackson*, 388 Mass. 98, 104-105 (1983); *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982); *Commonwealth* v. *Jackson*, 384 Mass. 572, 578 (1981); *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962). See also *Commonwealth* v. *Modica*, 24 Mass. App. Ct. 334, 342 (1987); *Commonwealth* v. *Wood*, 7 Mass. App. Ct. 455, 459-460 (1979). We have also indicated that a judge's decision in this area will be upheld "except for palpable error." *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981). See *Commonwealth* v. *Harvey*, *supra* at 359.

The evidence here had little unambiguous probative value. The defendant's statement — "Tell them I'll plead guilty to manslaughter" — did not amount to a confession because it is neither "a direct acknowledgement of guilt of the precise crime charged [n]or of all facts necessary to establish guilt of that crime." P.J. Liacos, Massachusetts Evidence, 296-297 (5th ed. 1981). See *Commonwealth* v. *Haywood*, 247 Mass. 16, 18 (1923). The statement is not clearly an admission either. "An admission in a criminal case is a statement by the accused, direct or implied, of facts pertinent to the issue, which although insufficient in itself to warrant a conviction tends in connection with proof of other facts to establish his guilt." *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957). The statement suggested the possibility of plea bargaining as to manslaughter, a lesser-included offense of one of the crimes with which the defendant was charged. While the statement could be argued as having some features of an admission, it could also be characterized as simply an expression of the defendant's despondency. This latter consideration is emphasized by the defendant's added exclamations — "I don't give a shit what happens to me. They can kill me. I

don't care." The judge noted this inherent ambiguity. As the judge stated: "Although it can be conceivably viewed as an admission of guilt, the defendant's statement . . . is just as plausibly an irrational outburst resulting. from his first contact with the judicial system."

There is no question that the statement was prejudicial. The statement could be vigorously urged to the jury at trial as constituting the equivalent of an offer to plead guilty to the homicide. The jury in turn might give the statement, notwithstanding its ambiguity, conclusive effect on the issue of his guilt of murder in the first degree. The likelihood that the jury might place improper weight on the statement was therefore considerable, see *People* v. *Friedman*, 79 Ill. 2d 341, 353 (1980), and posed a problem which was not capable of being resolved in a satisfactory manner by instructions to the jury on how they should evaluate the evidence. Finally, the judge could have considered that the utterances were made by the defendant held in detention after the completion of a lengthy probable cause hearing in a case which had generated wide and (for the defendant) unfavorable publicity. That the background of the case, and the context in which the statement was made, were known to the judge derives from his special assignment, after our decision in *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989), to preside at all proceedings on the indictments. The judge could draw on his knowledge and particular experiences with the case in balancing the factors of probative value and prejudicial effect and in deciding whether exclusion of the evidence was necessary in the interests of a fair trial. The judge concluded: "The questionable probative value that the defendant's statement thus carries on the issue of guilt is outweighed by the undeniable prejudicial effect it would have if heard by a jury." We cannot say that this determination is palpably wrong. *Commonwealth* v. *Harvey*, *supra* at 359.

The order allowing the defendant's motion to exclude the defendant's statements is affirmed.

*So ordered.*