## COMMONWEALTH vs. ROBERT P. FILOS.

Middlesex. December 7, 1994. - May 16, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Abortion. Accessory and Principal. Injunction. Practice, Criminal*, Instructions to jury, Required finding. *Evidence*, Photograph, Relevancy and materiality. *Words*, "Aiding or abetting."

At the trial of a complaint for criminal contempt, the judge adequately instructed the jury on all the required elements, including intent. [350-353]

There was no merit to a criminal defendant's claim that the instructions given by the judge on the charge of criminal contempt allowed the jury to find the defendant guilty by association and for expression protected by the First Amendment to the United States Constitution. [353] NOLAN, J., dissenting, with whom LYNCH, J., joined.

Evidence at the trial of a complaint for criminal contempt was sufficient to warrant the jury in finding the defendant guilty beyond a reasonable doubt and the defendant's motion for a required finding of not guilty was correctly denied. [353-356] NOLAN, J., dissenting, with whom LYNCH, J., joined.

At a criminal trial the judge properly admitted in evidence certain photographs as relevant to the issues being tried. [356-357]

INDICTMENT found and returned in the Superior Court Department on March 26, 1992.

The case was tried before *Howard J. Whitehead*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David M. Prentiss & Luke Stanton* for the defendant.

*William J. Duensing*, Assistant Attorney General, for the Commonwealth.

LIACOS, C.J. The defendant appeals from his conviction of criminal contempt and claims (1) that the trial judge's charge to the jury omitted necessary instructions on the ele-

ment of intent and that the instructions given allowed the jury to convict the defendant for conduct protected by the First Amendment to the United States Constitution, (2) that the Commonwealth introduced insufficient evidence and therefore the defendant's motions for a required finding of not guilty were improperly denied, and (3) that the judge erroneously admitted in evidence photographs which were both irrelevant and prejudicial to the defendant's case. We transferred the appeal to this court on our own motion. We affirm.

On October 28, 1991, a Superior Court judge issued an amended permanent injunction enjoining the defendant and numerous other named individuals and organizations from engaging in certain activities at or near facilities that provide abortion counselling or services. The body of the injunction is set forth in the margin.[1] The defendant's prosecution for criminal contempt was based on a violation of clause (c), which prohibits "directing, instructing, conspiring with and/or aiding or abetting directly or indirectly any person, per-

---

[1]"The defendants . . . are permanently enjoined, individually and collectively, from:

"(a) trespassing on, blocking or in any way obstructing access (either ingress or egress) to any facility in the Commonwealth which provides abortion counselling or services; or

"(b) physically restraining or obstructing or committing any acts of force or violence against persons entering, leaving, working at or seeking to obtain services from any facility in the Commonwealth which provides abortion counselling or services; or

"(c) directing, instructing, conspiring with and/or aiding or abetting directly or indirectly any person, persons, groups or organizations who engage in any of the acts described in paragraphs (a) and (b) above."

The injunction stated that a violation of its order would constitute a criminal offense. This injunction, in its preliminary form, its permanent form, and as it stands now, has been at issue before this court on prior occasions. See *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, cert. denied, 115 S. Ct. 188 (1994); *Commonwealth* v. *Cotter*, 415 Mass. 183 (1993); *Commonwealth* v. *Brogan*, 415 Mass. 169 (1993); *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701 (1990).

sons, groups or organizations who engage in any of the acts described in paragraphs (a) and (b)."[2]

The defendant was arrested during a blockade of the Gynecare reproductive health clinic on Tremont Street in Boston on January 4, 1992. The blockade consisted of about thirty people, sitting directly in front of the clinic's entrance, attached to each other by locks modified so as to make them difficult to cut. Other demonstrators were sitting on the sidewalk with their arms interlocked so as to surround the blockaders. Additionally, there was a large group of demonstrators standing around the blockade along with numerous spectators. About fifty police officers were dispatched to the clinic to remove the blockaders, handle the crowd, and keep Tremont Street clear for traffic.

. Two police detectives who were present at the scene of the blockade testified that they observed the defendant among the crowd of demonstrators, although he was not one of the persons directly blocking the clinic's entrance. They observed the defendant speaking with other persons named in the injunction as well as known leaders of the group Operation Rescue, an organization named in the injunction. The defendant was observed gesturing to people and pointing to empty spots in the blockade as the police removed blockaders. These persons were observed trying to fill, pursuant to the defendant's gestures, the gaps in the blockade created when the police removed other blockaders. One detective testified that he saw the defendant pulling a man by the sleeve toward the blockade area. The defendant was arrested after being chased by police down Tremont Street and was subsequently charged with violating the injunction.

1. *Jury instructions.* The defendant first argues that the jury instructions on aiding or abetting were incorrect in light of our discussion of clause (c) in *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, cert. denied, 115 S.

---

[2]The parties stipulated at trial that the injunction was in effect on the day of the defendant's arrest and that the defendant had actual notice of the injunction.

Ct. 188 (1994) (hereinafter *Planned Parenthood*), and that the instructions given allowed the jury to find the defendant guilty by association and for expression protected by the First Amendment.

*Planned Parenthood, supra,* decided after the defendant's trial, involved, inter alia, a constitutional challenge to clause (c) of the injunction. In response to the defendants' argument that the clause was impermissibly vague and permitted a finding of guilt by association, we concluded that clause (c) was constitutionally sound. We stated that clause (c), "using the words 'aiding or abetting,' is modeled on traditional concepts of accessory liability which limit the scope of the injunction and identify those acts that are prohibited." *Id.* at 481. We went on to state that, because the section is modeled on traditional concepts of accessory liability, it is clear that "[a]ny violator of the prohibition against aiding or abetting in clause (c) must share the mental state of the principal violator." *Id.* We further stated that, "[b]ecause intentional conduct is the measure of a violation of . . . clauses (a) and (b) of the injunction, proof of a violation of the 'aiding or abetting' prohibition of clause (c) will require a showing of a defendant's intention to assist intentional conduct violative of clause (a) or clause (b), or both." *Id.*

The defendant claims that the trial judge's instructions on aiding or abetting were insufficient in light of the *Planned Parenthood* opinion in that they did not instruct the jury that in order to find the defendant guilty they must first find that a person or persons intentionally violated clause (a) or (b) of the injunction and also that the defendant shared the mental state of those principal violators. We disagree.

"We . . . view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Galford*, 413 Mass. 364, 372 (1992), cert. denied, 506 U.S. 1065 (1993), quoting *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). After a careful review of the judge's charge, we conclude that the instructions were not erroneous. They were sufficient, when viewed in their entirety, properly to inform the

jury of the applicable law with regard to the element of intent necessary for a finding that the defendant aided or abetted in violation of clause (c).

The judge instructed the jury that it was the Commonwealth's burden to prove that a person or group engaged in one or more of the acts described in clause (a) or (b). The jury were also specifically told that in order to return a guilty verdict, they must find that the defendant intentionally violated the injunction and that he "shar[ed] the intent" of the principal violators. The judge charged that "[a]iding and abetting means to intentionally participate with another in the commission of an act as something the defendant wishes to bring about and seeks by his actions to make succeed." He further instructed that the Commonwealth was required to prove that the defendant was present, aided or assisted in the actions or stood by, was willing and able to help if necessary, and "that the defendant did so while sharing the intent required to engage in the action." The judge also instructed that aiding or abetting requires that the principal violator and the defendant "consciously act together before or during the action to bring it about" and that "in order to prove the defendant guilty, the Commonwealth [must] prove beyond a reasonable doubt that the defendant intentionally violated the order."

The wording of the charge, as demonstrated by the excerpts provided above, adequately communicated that both the principal violators and the defendant, as accessory, must have acted intentionally. See *Commonwealth v. Galford, supra* at 372; *Commonwealth v. Sellon, supra.* In their entirety, the judge's instructions adequately informed the jury of all of the elements of accessory liability as set forth in *Planned Parenthood, supra.* See *Commonwealth v. Sylvester,* 400 Mass. 334, 339 n.6 (1987); *Commonwealth v. Richards,* 363 Mass. 299 (1973). In *Planned Parenthood, supra* at 481, we addressed a nearly identical First Amendment challenge and stated there that, "[t]he complete answer to the defendant['s] claims is that clause (c), using the words 'aiding or abetting' is modeled on traditional concepts of ac-

cessory liability which limit the scope of the injunction and identify those acts that are prohibited."

In addition to his argument that the judge's instructions were inadequate under *Planned Parenthood, supra,* the defendant claims that the instructions given allowed the jury to find him guilty by association and for expression protected by the First Amendment.[3] This claim is without merit. With regard to the issue of guilt by association, the judge carefully instructed the jury that "[e]ven if you find the defendant associated with persons who committed the subject act, that does not justify the inference, in and of itself . . . that the defendant participated in the commission of the act. . . . Our law does not permit a finding of guilt by association." There was no error.[4]

2. *Sufficiency of the evidence.* The defendant next claims that the evidence presented by the prosecution was insufficient to sustain a conviction under clause (c) of the injunction and that therefore his motions for a required finding of not guilty should have been allowed.

We have stated that "a motion for a [required finding of not guilty] should be denied 'if all the circumstances including inferences [that are not too remote according to the usual

[3]The defendant points particularly to the portion of the charge in which the judge defined "directing" and "instructing," two words which appear in clause (c). The defendant claims that these instructions "make it unlawful to provide guidance, advice, information, and encouragement in the context of a demonstration" and therefore violate the First Amendment right to free expression. We disagree. The judge did not act improperly in defining words used in the injunction. Further, clause (c) has been held to be constitutional. What is forbidden by clause (c) is not free expression but the aiding and abetting of persons engaged in the illegal acts proscribed by clauses (a) and (b).

[4]The United States Supreme Court, in *Madsen* v. *Women's Health Center, Inc.,* 114 S. Ct. 2516 (1994), addressed a clause of an injunction similar to the one at issue here. The Court concluded that, "petitioners are not enjoined from associating with others or from joining with them to express a particular viewpoint. The freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Id.* at 2530. Our decision in *Planned Parenthood,* is in accord with this reasoning, as is our decision in the instant case.

course of events] are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'" *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979), quoting *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). "[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore, supra* at 677, quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). After viewing the evidence presented by the prosecution in this case under the *Latimore* standard, we conclude that the defendant's motions were properly denied.

To prove a violation of clause (c) of the injunction, the Commonwealth was required to introduce sufficient evidence from which the jury could find the defendant guilty of "directing, instructing, conspiring with and/or aiding or abetting directly or indirectly any person, persons, groups or organizations who engage in any of the acts described in [clauses] (a) and (b)." In order to prove that the defendant conspired with the blockaders, the Commonwealth had to provide sufficient evidence from which the jury could infer that the defendant and the blockaders had an agreement to violate the injunction. To prove that the defendant was guilty of aiding or abetting the blockaders, the Commonwealth had to introduce sufficient evidence that someone committed the prohibited act, and that the defendant intentionally assisted the principal in the commission of the crime while sharing the mental state required for that crime. See *Planned Parenthood, supra* at 481; *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973).

The Commonwealth presented the testimony of two police detectives who were present at the scene of the blockade and testified to the defendant's behavior. The first detective, who knew the defendant to be the subject of the injunction and a frequent antiabortion demonstrator, testified that he observed the defendant speaking with three or four different people in

the crowd of demonstrators and that he saw the defendant pointing to spots in the blockade that were vacant because the police had removed blockaders. The detective testified that after speaking with the defendant, some of the persons then dropped to their knees and crawled in to join the blockade. The detective witnessed a similar scenario some time later, the only difference being that the individuals to whom the defendant spoke were prevented by the police from joining the blockade. This detective also testified that he also saw the defendant speaking with the individual who later produced the keys to the locks connecting the blockaders.

The second police detective who was also familiar with the defendant, observed the defendant speaking with Mary Schumacher, a known leader of Operation Rescue, an organization named in the injunction. The detective observed the defendant also speaking with other known antiabortion demonstrators. The detective saw the defendant speak to people and then observed those people join the blockade. He also observed the defendant point to a spot in the blockade while grasping a man by the sleeve and pulling him toward the blockade area. This man then became part of the blockade. A small portion of the detectives' testimony was confirmed by a videotape of the blockade that was admitted at trial and shown to the jury. An employee of Gynecare who was trapped inside the clinic during the blockade was the only other witness at the defendant's trial.[5] She testified to the existence of the blockade but provided no testimony concerning the defendant's actions.

Based on the evidence presented at trial, we conclude that a rational trier of fact could properly draw the inference that the defendant directed, instructed, conspired with, aided, or abetted persons engaging in acts described in clause (a) or (b) of the injunction, namely, "blocking or in any way obstructing access . . . to any facility in the Commonwealth which provides abortion counselling or services." Such an inference would not be "too remote according to the usual

---

[5]The defendant did not call any witnesses.

course of events." The defendant was observed behaving in a manner that would indicate that he had conspired with the blockaders or, at the very least, was an accessory to their blocking the clinic's entrance. "A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary." *Commonwealth* v. *Gagnon*, 408 Mass. 185, 200-201 (1990). The defendant's motion for a required finding of not guilty was therefore correctly denied.

3. *Admission of photographs.* Finally, the defendant argues that it was error for the judge to admit in evidence numerous still photographs of the blockade because the photographs were irrelevant and prejudicial to the defense. The photographs are not in the record before this court. However, the photographs were taken from a videotape of the blockade which was also admitted in evidence and which is before us.[6]

It is well settled that evidence which has a "rational tendency to prove an issue in the case," *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989), quoting *Commonwealth* v. *Chretien*, 383 Mass. 123, 136 (1981), and renders "the desired inference more probable than it would have been without [the evidence]" is relevant, and therefore admissible. *Commonwealth* v. *Fayerweather, supra*, quoting *Commonwealth* v. *Copeland*, 375 Mass. 438, 443 (1978). Relevant evidence may, however, be excluded if the court finds that its probative value is outweighed by the prejudicial effect it may have on the jury. *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990), and cases cited. The determination whether relevant evidence is prejudicial and thus inadmissible is within the judge's discretion and not reversible on appeal in the absence of "palpable error." *Id.*, quoting *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981).

---

[6]Curiously, the defendant does not argue that it was error to admit the videotape from which the photographs originated. However, even if he had, the same reasoning we apply here in concluding that the still photographs were properly admitted would apply equally to the videotape.

After viewing the videotape from which the still photographs were taken, we think there is no question that photographs of the blockade were relevant to the prosecution's case. In order to prove a violation of clause (c) of the injunction, the prosecution was required first to show that a person or persons committed the acts prohibited by clause (a) or (b) of the injunction. See note 1, *supra*. The videotape depicts a large group of persons blocking access to a facility, Gynecare, which provides abortion services and counselling. The videotape also shows that the defendant was present at that blockade.

The defendant argues he was unduly prejudiced by the admission of the photographs because they permitted the jury to find the defendant guilty by association with the blockaders. There was no error in the judge's decision to admit the photographs. The judge properly could have determined that any potential risk of prejudice to the defendant was outweighed by the photographs' high probative value. We see no reason to disturb that finding.

*Judgment affirmed.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). Because I do not agree that there was sufficient evidence to permit a rational juror to find beyond a reasonable doubt that the defendant violated clause (c) of the injunction, and because the jury instructions defining the key terms of the injunction allowed the jury to convict the defendant for both constitutionally protected and unprotected activities, I dissent.

1. *Sufficiency of the evidence.* The majority affirms the denial of the defendant's motion for a required finding of not guilty because it concludes that "a rational trier of fact could properly draw the inference that the defendant directed, instructed, conspired with, aided or abetted persons engaging in acts described in clause (a) or (b) of the injunction." *Ante*

at 355. A careful review of the evidence at trial, however, reveals that the evidence is insufficient to sustain the defendant's conviction, especially in light of the fact that the defendant's actions occurred during the course of a political demonstration.

In reviewing the denial of a motion for a required finding of not guilty, we consider whether the evidence, taken in the light most favorable to the Commonwealth, is sufficient to permit the jury to infer the existence of the essential elements of the crime charged. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). To sustain the denial of such a motion, "it is not enough for the appellate court to find that there was *some record evidence,* however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element *beyond a reasonable doubt*" (emphasis added). *Id.* at 677-678.

To support its contention that there was sufficient evidence to sustain the defendant's conviction, the Commonwealth relies on the following evidence: the defendant was present at the demonstration; he associated with "known leaders of Operation Rescue" and "known antiabortion demonstrators"; he spoke with several persons who subsequently joined the blockade; and he gestured during the course of the demonstration. *Ante* at 350, 354-355. Much of this evidence, however, was not probative on the issue whether the defendant violated the injunction, and would not permit a rational trier of fact to infer that the defendant directed, instructed, conspired with, aided, or abetted persons engaging in acts described in clause (a) or (b) of the injunction.

First, the mere fact that the defendant was present at the demonstration does not justify the inference that the defendant assisted others in violating the injunction.[1] Second, the fact that the defendant spoke with "known leaders of Opera-

---

[1] Although the defendant was present at the demonstration, at no point did he participate in the blockade. On the contrary, the evidence clearly showed that the defendant remained on the sidelines, lawfully demonstrating with a group of supporters who sang and carried signs.

tion Rescue" and "known antiabortion demonstrators" also does not help the Commonwealth's case. In order to prove that the defendant violated clause (c) of the injunction, the Commonwealth must prove that a person or an organization violated clause (a) or (b) of the injunction. See *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 481, cert. denied, 115 S. Ct. 188 (1994). There was no evidence to suggest, however, that either the "known leaders of Operation Rescue" or the "known antiabortion demonstrators" with whom the defendant spoke, violated or attempted to violate the injunction. Thus, evidence of the defendant's association with these individuals was not relevant to the issue whether the defendant violated clause (c) of the injunction. Further, the Commonwealth's repeated references to the defendant's association with these individuals was highly inflammatory as it contributed to the likelihood that the jury would find the defendant guilty by association.

The Commonwealth also relies on evidence that the defendant spoke with several persons who joined the blockade after having spoken with him. The Commonwealth offered no evidence, however, as to the content of these conversations, and none of these individuals was arrested or charged with violating the injunction. Even if the jury could have found that the defendant associated with persons who subsequently joined the blockade, this alone does not justify an inference that he assisted in the commission of the crime. Post hoc, non ergo propter hoc. See *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970); *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). "A contrary holding would be tantamount to introducing into our law a doctrine of guilty by association . . . ." *Id*. See also *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982) ("[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct . . . that itself is not protected").

Thus, we are left with the core evidence on which the Commonwealth primarily relies: the fact that the defendant made gestures which police interpreted as "directing" others

to join the blockade. These gestures, consisting of pointing to empty spots in the blockade and grabbing an individual by the sleeve of his shirt, are commonplace actions which, in the course of a political demonstration, are ambiguous and inconclusive in nature. See *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 412 (1986) (defendant's actions of looking up and down street insufficient to prove he acted as lookout). This evidence could only leave to surmise and conjecture the content of the defendant's words, the significance of the defendant's actions, and the intent of the defendant to assist others in violating clause (a) or (b) of the injunction. See *Commonwealth* v. *Fancy, supra.*

In the context of a political demonstration, we must carefully balance the rights of persons seeking abortions with the rights of persons protesting against laws which they believe are morally wrong. Unfortunately, today's decision will undeniably chill the free expression of lawful protesters by sending a clear message that even the most commonplace actions during the course of a demonstration may suffice to sustain a conviction for criminal contempt. Lawful protesters will be deterred from participating in peaceful demonstrations for fear that seemingly innocuous actions may be misconstrued as violative of clause (c) of the injunction. On this record, the evidence is insufficient as a matter of law.

2. *Jury instructions.* Even assuming that there was no error in the denial of the defendant's motion for a required finding of not guilty, the defendant's conviction still should be reversed. The jury instructions defining key terms of the injunction, such as "directing," "instructing," and "aiding or abetting," were so broad that the jury could have convicted the defendant for constitutionally protected activities.[2]

---

[2]The majority dismisses this claim by pointing out that clause (c) of the injunction has been held to be constitutional. *Ante* at 351, 353 n.3. See *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, cert. denied, 115 S. Ct. 188 (1994). Even if the injunction on its face is constitutional, the instructions defining the proper scope of the injunction still may deprive the defendant of his constitutional rights.

The majority also states that "[t]he judge did not act improperly in defining words used in the injunction." *Ante* at 353 n.3. This response also

Although some of the language which the judge used to
define the injunction's terms properly limited the scope of the
injunction, other language permitted the jury to convict the
defendant for activities which clearly fall within the protec-
tion of the First Amendment to the United States Constitu-
tion.[3] For instance, the judge's charge defining the term "in-
structing," allowed the jury to convict the defendant not only
for "ordering" others to engage in the prohibited activity, but
also for "conveying information" to those individuals.[4]
Clearly, this instruction burdens protected speech. Only if
the information conveyed by the defendant is likely to incite
another to engage in imminent lawless action may it be pro-
scribed. See *Brandenburg* v. *Ohio*, 395 U.S. 444, 447-448
(1969) (per curiam) (mere abstract advocacy of unlawful
conduct may not be prohibited).[5] The judge's instruction,

fails to address the defendant's argument. There is no question that the
judge was entitled to define the terms of the injunction. What was re-
quired, however, was that he define them correctly.

Finally, the majority cites to *Madsen* v. *Women's Health Ctr., Inc.*, 114
S. Ct. 2516 (1994), to support its contention that the United States Su-
preme Court upheld a clause in an injunction which was similar to clause
(c). *Ante* at 353 n.4. Although the injunction at issue in the *Madsen* case
had a clause that prohibited the defendant from "encouraging, inciting, or
securing other persons to commit any of the prohibited acts," *id.* at 2522,
the Court did not consider the constitutionality of this clause. *Id.* at 2526
n.5. What the Court did consider was a portion of the injunction which
prohibited individuals "acting in concert" with those named in the injunc-
tion from (1) inhibiting or impeding the ingress or egress of persons into
the clinics; and (2) congregating, picketing, or patrolling within thirty-six
feet of the property line of the clinic. *Id.* at 2522, 2530.

[3]It is not enough that some of the language in the instruction properly
defined the scope of the injunction. When sanctionable "conduct occurs in
the context of constitutionally protected activity . . . 'precision of regula-
tion' is demanded." *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886,
916 (1982), quoting *NAACP* v. *Button*, 371 U.S. 415, 438 (1963).

[4]The judge told the jury that "instructing" means "to convey informa-
tion, to direct, to order, to tell what to do."

[5]"[T]he mere abstract teaching . . . of the moral propriety or even moral
necessity for a resort to force and violence, is not the same as preparing a
group for violent action and steeling it to such action." *Noto* v. *United
States*, 367 U.S. 290, 297-298 (1961). "A statute which fails to draw this
distinction impermissibly intrudes upon the freedoms guaranteed by the
First and Fourteenth Amendments. It sweeps within its condemnation

however, did not inform the jury of this limitation.[6] Thus, under this instruction, the jury could have found the defendant guilty of criminal contempt for merely conversing with others who participated in the blockade.[7]

The judge's instruction defining "aiding or abetting" further contributed to the likelihood that the jury would convict the defendant for protected activities. The judge informed the jury that the assistance required for "aiding or abetting" "may take the form of . . . encouraging the other person to engage in the act." Numerous activities could have been construed by the jury as "encouraging" other persons to engage in the blockade. Protected activities such as singing, chanting, picketing, or merely showing up in support of those who chose to further their cause through civil disobedience, could have fallen within the instruction's proscriptions.

The Supreme Court of the United States has consistently held that, where the instructions and evidence indicate the possibility that a defendant was convicted for constitutionally protected activities, that conviction must be reversed. *Stromberg* v. *California*, 283 U.S. 359, 369 (1931). "If,

---

speech which our Constitution has immunized from governmental control." *Brandenburg* v. *Ohio*, 395 U.S. 444, 448 (1969) (per curiam).

[6]Similarly, in defining the term "directing" the judge instructed the jury that the defendant would be in violation of the injunction if he "suggested" that others engage in the prohibited activity. This instruction, without further elucidation, also runs afoul of constitutional requirements. See *Brandenburg* v. *Ohio*, *supra* at 447-448.

[7]This instruction also allowed the jury to convict the defendant for "conveying information" without regard to whether the defendant specifically intended to assist individuals in violating the injunction. To punish association with a group having both legal and illegal aims, there must be clear proof that a defendant specifically intended to accomplish the aims of the organization by unlawful means. See *Noto* v. *United States*, *supra* at 299. "[T]his intent must be judged 'according to the strictest law,' for 'otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to [unlawful means], might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share." *NAACP* v. *Claiborne Hardware Co.*, *supra* at 919, quoting *Noto* v. *United States*, *supra* at 299-300.

under the instructions to the jury, one way of committing the offense charged is to perform an act protected by the Constitution . . . a general verdict of guilt [must] be set aside even if the defendant's unprotected conduct, considered separately, would support the verdict." *Zant* v. *Stephens*, 462 U.S. 862, 883 (1983). In *Street* v. *New York*, 394 U.S. 576, 578 (1969), the defendant was convicted under a New York statute which prohibited publicly defying or casting contempt on the American flag either by words or acts. Because the record indicated that the defendant's conviction could have been based on his protected words as well as on his arguably unprotected conduct, i.e., flag burning, the Court reversed the defendant's conviction. *Id.* at 590, 594.

Similarly, in *Thomas* v. *Collins*, 323 U.S. 516, 518 (1945), a labor organizer was adjudged in contempt for violating a restraining order which prohibited him from soliciting new union members without first obtaining an organizer's card as required by a Texas statute. The order adjudging the defendant in contempt was based both on a speech expressing a general invitation to a group of nonunion workers, which the Court held to be constitutionally protected speech, as well as on the solicitation of a single individual. *Id.* at 528-529. Because the record showed that the judgment rested both on the defendant's protected and unprotected conduct, the Court declined to adopt the State's argument that the judgment could be sustained on the basis of the individual solicitation alone. *Id.* at 528. "The judgment . . . must be affirmed as to both or as to neither." *Id.* at 529.

In *Street* and *Thomas*, the judgments rested, in part, on the fact that the defendant had been found guilty based on expressive activity protected by the First Amendment. Likewise, in the present case, the jury could have convicted the defendant based on protected conduct which occurred during the course of a lawful demonstration. There was evidence that the defendant had spoken with several individuals who subsequently joined the blockade. Evidence of these conversations could have supported impermissibly a finding that the defendant "conveyed information" to those who violated the

injunction. Furthermore, the mere presence of the defendant at the blockade could have been construed as "encouraging" other persons to engage in acts prohibited by clause (a) or (b) of the injunction. Because the judge's instructions allowed the jury to base their verdict on both protected and unprotected activities, and because it is not clear on which evidence the jury relied, the defendant's conviction must be reversed.

3. *Conclusion.* Although I do not suggest that those who violated the injunction should escape proper contempt proceedings, instructions that allow a jury to convict an individual for lawfully and peacefully demonstrating against a particular cause reach too far. Whatever the particular contours of this injunction were intended to be, the instructions defining the terms of the injunction clearly crossed the line and allowed the jury to convict the defendant based on activities which are protected by the First Amendment. As applied, the injunction not only infringes on the defendant's First Amendment rights, but also chills the free speech of peaceful protesters in the future. I dissent.