## Commonwealth vs. Victor Grieco.

Suffolk.  March 2, 1982. — June 9, 1982.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & Lynch, JJ.

*Rape.  Evidence,* Relevancy and materiality, Sexual conduct.  *Words,*
  "Specific instances."

At the trial of indictments for unnatural rape and assault with intent to
  rape, proffered evidence of prior sexual conduct between the defend-
  ant and the victim should have been admitted under G. L. c. 233,
  § 21B, the rape-shield statute, if the judge found that the probative
  value of the evidence was sufficient to outweigh its prejudicial effect to
  the victim; in the circumstances, it was error to require the defendant
  to particularize the date and time of incidents which allegedly oc-
  curred.  [486-491]

Indictments found and returned in the Superior Court
Department on August 13, 1979.

The cases were tried before *Zobel,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Carlo A. Obligato* for the defendant.

*David B. Mark,* Legal Assistant to the District Attorney
(*Michael J. Traft,* Assistant District Attorney, with him) for
the Commonwealth.

Liacos, J.  Following a trial by jury, the defendant was
found guilty of unnatural rape and assault with intent to
rape.  At a pretrial hearing, the judge denied the defend-
ant's motion to admit evidence filed pursuant to G. L.
c. 233, § 21B, the rape-shield statute.  The defendant ap-
peals from his convictions citing, as error, the judge's exclu-
sion of his proffered evidence.  We transferred the appeal
here on our own motion.

The defendant argues on appeal that the judge's refusal to permit the defendant to testify before the jury regarding past sexual relations between the complainant and the defendant was a misinterpretation of G. L. c. 233, § 21B, and that the exclusion of the evidence violated the due process and confrontation clauses of the United States Constitution. The defendant further argues that the exclusion was prejudicial, requiring a reversal of the judgments. We conclude that the evidence offered by the defendant should have been admitted, and its exclusion requires a new trial on both charges. We need not reach the constitutional issues raised by the defendant.

We summarize the evidence. The complainant testified that she met the defendant about "a month and one-half" prior to June 17, 1979, the evening of the alleged crimes. According to her testimony, she and the defendant had been out together previously on two occasions; the second time they went to the defendant's home where she met his mother.

On June 17, 1979, the complainant went to the Caravan Club, a "disco" and bar in Revere, where the defendant and she had spent their first "date." The defendant, who was also present, bought her a drink and danced with her. About 1:30 A.M. the defendant agreed to take the complainant home. The complainant testified that the defendant, while driving, undid his trousers and exposed himself. The defendant grabbed her by the back of the head and pulled her towards him. She pulled away from him, and the defendant let her go. Later, he drove into a parking lot and he pulled her head to his penis which entered her mouth. Again, she pulled away, but the defendant pushed her face against his passenger window and slapped her mouth. The complainant further testified that the defendant reclined her seat and attempted to undress her. At this point, the complainant got out and ran from the car; the defendant drove up beside her and threw her pocketbook to her. She then jumped over a "ramp" or guardrail, fell, and rolled down a grassy slope to a fire station.

A firefighter testified that when the complainant arrived at the fire station she was upset and her clothes were in disarray. When the police arrived, the complainant was in the back of an ambulance and upset, almost to the point of hysteria. A hospital report indicated no evidence of trauma or visible bruises or marks.

The defendant testified that he had known the complainant for about one year before the incident. He first dated her in January, 1979, and thereafter she had visited his home at least three times, and they spent many evenings together. He testified that on the night of the incident, he met the complainant at the Caravan Club and the two left together. As he was driving, the pair began kissing, and she unzipped his pants and voluntarily commenced fellatio. Then the complainant said that she did not want to continue. The defendant told her to get out of the car and threw her pocketbook to her. After she got out of the car, the defendant changed his mind and decided to drive her home. The complainant, however, refused to return to the car and ran off screaming, "rape." The defendant acknowledged, as testified to by a police officer, that when he was arrested outside his home later that morning, he had stated, "All this for half a blow job."

The defendant sought to introduce evidence of prior sexual conduct between the complainant and himself, pursuant to G. L. c. 233, § 21B. At a pretrial hearing on his motion, the defendant testified that he and the complainant engaged in acts of intercourse and fellatio at least five times between January and May, 1979. The defendant stated that he could not remember specific dates and would be lying to the court if he attempted to testify to "any special date." He testified that the sexual conduct took place in his house when the two were alone. The defendant also testified that his mother surprised them at home one day and found them both in their underclothes. The defendant's mother was also willing to testify regarding this particular occurrence.

The relevant part of G. L. c. 233, § 21B (rape-shield statute), inserted by St. 1977, c. 110, provides: "Evidence

of specific instances of a victim's sexual conduct . . . shall not be admissible except evidence of the victim's sexual conduct with the defendant . . .; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not. . . . The finding of the court shall be in writing and filed . . . ." The judge ruled that the proffered evidence of prior sexual conduct between the defendant and the complainant could not be admitted, based on his interpretation of the rape-shield statute. The judge ruled that because the defendant had failed to provide the place, the date, and the time of the day of the prior sexual acts, the evidence did not meet the statutory requirement of "specific instances." The judge, if not "bound by the statute," stated that he would have admitted the evidence in his discretion in the form of direct examination of the defendant.

"The statutory bar to the admission of evidence of specific instances of sexual conduct is essentially a reflection of a pre-existing common law rule. In rape cases, evidence of specific instances of prior sexual intercourse with persons other than the defendant long has been inadmissible. See *Commonwealth* v. *Gouveia,* 371 Mass. 566, 569 (1976); *Commonwealth* v. *McKay,* 363 Mass. 220, 226 (1973); *Commonwealth* v. *Regan,* 105 Mass. 593 (1870)." *Commonwealth* v. *Joyce,* 382 Mass. 222, 227 (1981). However, evidence of specific instances of sexual conduct between the victim and the defendant, relevant to the issue of consent, was admissible under the common law rule. See generally Annot., 94 A.L.R.3d 257 (1979). Professor Wigmore discusses evidence of prior acts of intercourse between the complainant and the defendant as involving a principle different from that involved in evidence of lack of chastity, or of acts of intercourse with other men. As to evidence of prior acts of intercourse between the complainant and the defendant, Wigmore wrote: "Such conduct is not intended

to show a general willingness or disposition to commit acts of unchastity, but merely an emotion towards the particular defendant . . .; it is thus not only more cogent as evidence, but is not open to the objections advanced against evidence of intercourse with third persons; and its admissibility has always been conceded." 1 J. Wigmore, Evidence § 200(3) (3d ed. 1940). See also 4 S. Gard, Jones on Evidence, Civil and Criminal § 25:16 (6th ed. 1972): "In this country, *while the prosecutrix may be questioned as to acts of intercourse with the accused* in order to disprove the allegation of force in a rape case, there is doubt as to whether questions as to her intercourse with other men are proper" (emphasis supplied). Cf. *State* v. *Forshner,* 43 N.H. 89 (1861). See also *Commonwealth* v. *Kendall,* 113 Mass. 210 (1873) (evidence of "former familiarities" between victim and defendant admitted); *McLean* v. *United States,* 377 A.2d 74, 78 n.5 (D.C. App. 1977) (testimony that defendant and complainant had sexual intercourse "on many occasions" admitted); *People* v. *Wilcox,* 33 Ill. App. 3d 432, 435 (1975) (defendant testified regarding sexual relations with victim occurring "ten or more times" prior to alleged incident). Thus, the trial judge in the instant case was correct in assuming that, under the common law rule, according to his discretion, the evidence could have been admitted.

That evidence of prior acts of intercourse with the defendant is distinguished from evidence attacking the victim's character, even under modern rape-shield legislation, is confirmed by the legislative history of Privacy Protection for Rape Victims Act of 1978, Pub. L. No. 95-540, 92 Stat. 2046 (now Fed. R. Evid. 412). See J. Weinstein and M. Berger, Evidence par. 412[01] (1980 Supp.). Federal Rules of Evidence 412 is comparable to G. L. c. 233, § 21B; it allows evidence of "specific instances" of complainant's "past sexual behavior with the accused," if relevant to the issue of consent. We perceive no change in this common law principle to be wrought by G. L. c. 233, § 21B.

The Massachusetts rape-shield statute does change the procedure that must be followed prior to admission of the

evidence of prior sexual acts between the parties. Procedural requirements include a written motion, offer of proof, an in camera hearing, and written findings by the judge. The threshold determination of admissibility to be made under the statute is the same, however, as it was at common law in regard to the relevancy of any such proffered evidence. The probative worth of the evidence, or lack of it, is to be determined by the trial judge under the well established standard that the evidence "must merely render the desired inference [of consent] more probable than it would be without the evidence." *Green* v. *Richmond,* 369 Mass. 47, 59 (1975). See *Poirier* v. *Plymouth,* 374 Mass. 206 (1978). Cf. Fed. R. Evid., 401 (28 U.S.C. app. [1976]); Proposed Mass. R. Evid. 401 (July, 1980). Whether the evidence, once admitted, establishes the proposition for which it is offered is, of course, for the jury. *Poirier* v. *Plymouth, supra* at 210. Once the initial determination of admissibility is made, the statute then imposes an additional responsibility on the judge. Such evidence may be excluded under the statute if the judge finds that the weight and relevancy of the proffered evidence is not sufficient to outweigh the prejudicial effect to the victim. G. L. c. 233, § 21B. The judge in this case never reached this balancing test, as he felt bound to exclude it based on the wording of the statute.[1]

---

[1] The Commonwealth argues that the words of the statute must be given their "usual and natural meaning." See *Commonwealth* v. *Thomas,* 359 Mass. 386, 387 (1971). A "specific instance," in accordance with the plain meaning of the words would require a precise and definite occurrence and, thus, require the place, date, and time of day. The phrase "specific instance," however, is a word of art in the field of evidence and connotes a kind of circumstantial evidence that is not opinion or reputation evidence. The Model Code of Evidence, rule 307(3)(b) (1942), for example, states that specific instances of behavior may be used to prove habit and, as an illustration of admissible testimony, states that "W offers to testify . . . that he had on numerous occasions been with X" and observed certain behavior. Another author has observed that a good example of specific instances of conduct would be that W observed something "'some twenty times or more' during the prior five years." Lewan, The Rationale of Habit Evidence, 16 Syracuse L. Rev. 39, 51 (1965). See also Fed. R. Evid. 405 (methods of proving character); Fed. R. Evid. 608(b) (specific instances of character for impeachment purposes) (28 U.S.C. app. [1976]).

This court, in *Commonwealth* v. *Chretien,* 383 Mass. 123, 136 (1981), rejected a defendant's arguments that certain evidence was admissible under the rape-shield statute. The court stated that the evidence must meet a threshold test of relevancy, i.e., the evidence must have a "'rational tendency to prove an issue in the case.' *Commonwealth* v. *LaCorte,* 373 Mass. 700, 702 (1977)." In the instant case, the defendant's proffered evidence, if believed by the jury, had a rational tendency to support his version of the facts that the complainant voluntarily committed acts of fellatio. The defendant's testimony was not so vague as to preclude effective cross-examination. Cf. *Commonwealth* v. *Chretien, supra* at 138 (theory under which defendant proceeded based on vague hope or mere speculation). The evidence of prior sexual conduct between the defendant and the complainant was specific and credible enough for the judge to have considered its relevancy and admissibility in evidence. The evidence was not remote; it also bears directly on a material issue, namely, the consent of the complainant. In these circumstances, it was not necessary for the defendant to particularize the exact date and time of incidents which allegedly occurred. The weight to be accorded the evidence is a question for the jury. See *Commonwealth* v. *Keizer,* 377 Mass. 264, 267-268 (1979); 1 J. Wigmore, Evidence § 200 (3d ed. 1940).

We are of the view that the defendant, on the facts of this case, suffered prejudice as a result of the judge's interpretation of the rape-shield statute. A pattern of recent consensual sexual activity between the complainant and the defendant is relevant on the issue of consent, a fundamental issue in determining guilt.[2] Tanford and Bocchino, Rape Victim Shield Laws and the Sixth Amendment, 128 U. Pa. L. Rev. 544, 571 (1980). See Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 58-59 (1977); Burnim, Massachusetts Rape-Shield

---

[2] We find no merit in the Commonwealth's argument that the consent was not an issue in this case.

Law — An Over-Step in the Right Direction, 64 Mass. L. Rev. 61, 67 (1979). See also, Tanford and Bocchino, *supra* at 553 (rape-shield statutes universally allow defendant to show prior consensual sexual conduct with victim when consent in issue). "Thus the proffered evidence, if believed, might have had a significant impact on the issue of consent and consequently on the outcome of the trial." *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978). The evidence should be excluded only if it is found that the probative value of the evidence is not sufficient to outweigh its prejudicial effect to the victim. We have examined the entire record and conclude that nothing is shown to warrant the exclusion of the evidence on this ground.

The judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial.

*So ordered.*