COMMONWEALTH *vs.* MORRIS W. FAYERWEATHER.

Bristol. September 12, 1989. - November 14, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Evidence,* Hospital record, Communication between patient and psychotherapist, Privileged communication, Relevancy and materiality, Impeachment of credibility. *Witness,* Credibility, Privilege, Psychiatric examination. *Privileged Communication. Constitutional Law,* Confrontation of witnesses. *Due Process of Law,* Delay in commencement of prosecution. *Practice, Criminal,* Delay in commencement of prosecution.

The defendant at a rape trial was prejudiced by the judge's exclusion of a hospital psychiatric report on the complainant's mental status approximately six weeks before the alleged rape in which the complainant claimed to have heard the voice of the defendant telling her to do certain things. [82-84]

At a rape trial, expert testimony regarding medical certainty was not necessary for the judge to determine whether the jury would be aided by the admission of a hospital psychiatric report, offered to raise doubt as to the complainant's ability to perceive the events of the day of the alleged rape. [83-84]

Dismissal of a criminal indictment on the ground of preindictment delay was not required where the evidence presented did not support a finding that the police intentionally caused the delay to gain a tactical advantage over the accused or that the delay was incurred in reckless disregard of known risks to the defendant's ability to mount a defense and where, in any event, the defendant's alleged inability to recall his whereabouts at the time of the incident due to the delay did not constitute the "severe prejudice" required for dismissal. [84-87]

INDICTMENT found and returned in the Superior Court Department on June 11, 1985.

The case was tried before *George Jacobs,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

·LIACOS, C.J. The defendant appeals from his conviction of rape, claiming improper exclusion at trial of the complainant's psychiatric records. He also asserts that prejudicial preindictment delay required dismissal of the indictment. For the reasons stated below, we reverse the conviction and remand for a new trial.

1. *Exclusion of psychiatric report.* The defendant argues, and we agree, that the judge at trial improperly excluded relevant evidence of the complainant's psychiatric condition.

We summarize the evidence before the jury. The complainant testified that she first met the defendant in 1971, when she was eight years old and he was a boy friend of her mother. She and her family moved from Fall River to the defendant's home in Providence, Rhode Island. The complainant testified that two to three nights a week, from the time the complainant was eight to when she was thirteen years old, the defendant would enter the complainant's room late at night and fondle her vagina. She made no complaint. The complainant testified, however, that she was afraid of the defendant because she once saw him strike one of her sisters. The defendant left the complainant's household in 1976.

In June, 1980, when she was sixteen years old, the complainant was residing at Corrigan Mental Health Center (Corrigan) in Fall River. At that time, the defendant was the boy friend of one of the complainant's sisters. Approximately one week before the incident on which the indictment was based, the defendant arrived at Corrigan and told the complainant that her sister was outside in his automobile and that they would be going for a ride. When the complainant remarked that her sister was not in the automobile, the defendant told her to be quiet. He ordered her to get into the automobile. The defendant then drove the complainant to Dave's Beach in Fall River and attempted to fondle her va-

gina. When the complainant started crying, the defendant stopped his activity.

The complainant testified that on June 18, 1980, the defendant arrived at Corrigan and told the complainant that he was taking her to go shopping for clothes. She again noted that her sister was not in the automobile. The defendant told her to get in the automobile, and they drove toward a Zayres department store (Zayres) in Fall River. Instead of going into the parking lot at Zayres, the defendant drove onto a dirt road behind Zayres, drove into a wooded area, and stopped the automobile.

The complainant testified that the defendant stated that he was going to finish what he had started. He removed the complainant's shorts and underwear, and then unzipped his pants. According to the complainant, the defendant pushed the complainant down on the seat and inserted his penis into her vagina. The defendant then got off the complainant, gave her a towel, and told her to wipe herself and to put her clothes on. The complainant indicated that the defendant had not threatened her with a weapon. She did not say anything to the defendant during the incident but stated that she was scared. The defendant took the complainant to Zayres, after telling her not to tell anybody what had happened. He bought the complainant a pair of shorts and a shirt.

After the defendant dropped her off at Corrigan, the complainant went to her room and ripped up the clothes the defendant had bought her. She was crying, and a friend at Corrigan asked her what was wrong. The complainant told her that the defendant had raped her. The next day, according to the complainant, she went to her mother's house and told her that the defendant had raped her. The complainant's mother called the police, who escorted the complainant to St. Anne's Hospital, where she was examined. A rape kit was used in this examination. Subsequent to these events, for a period of five weeks in 1984, the complainant went to Providence to live with her sister and the defendant, who were married at the time. The complainant stated that she went there upon

her discharge from Corrigan because she had no other place to go.

In addition to the complainant's testimony, the complainant's roommate at Corrigan testified that on June 18 she had seen the complainant leave with the defendant after the defendant told the complainant that the roommate could not join them. The complainant returned to her room a few hours later crying, and told her roommate that the defendant had raped her. In addition, the complainant's mother, the complainant's sister, a police officer who had arrived at the mother's house the day after the incident, and a nun at St. Anne's Hospital, where the complainant was taken for a rape kit test, all testified that, on the day after the incident, the complainant had told them that the defendant had raped her. The police officer and a physician from the hospital testified that the laboratory results of the rape kit indicated that no seminal fluid residue was found on any of the items submitted. No other physical evidence corroborating the alleged rape was entered in evidence.

The defendant attempted to introduce a hospital psychiatric report on the complainant's mental status made at Corrigan on May 5, 1980, approximately six weeks before the alleged rape. The report included the following statement: "She claims to hear voices, specifically claims to hear the voice of her sister's boyfriend telling her to do things but she is really not able to substantiate clearly that this is in fact a hallucination as opposed to either an intentional manipulation or perhaps a hysterical mental image." The defendant tried at first to introduce the report during the cross-examination of the complainant, and, because the judge wished to defer the matter, as part of his case-in-chief through Dr. Kennard C. Kobrin, the psychiatrist who made the report.[1]

The complainant asserted her psychotherapist-patient privilege under G. L. c. 233, § 20B (1988 ed.). Before deciding

---

[1]The Commonwealth does not claim on appeal that the report should not be admitted as hearsay. See G. L. c. 233, § 79 (1988 ed.) (admissibility of hospital records).

whether to rule on whether the defendant's right to a fair
trial outweighed the complainant's privilege, the judge took
testimony from Dr. Kobrin on voir dire. The judge asked the
psychiatrist, "[O]n the basis of any communications made to
you during May of 1980 and your treatment of [the com-
plainant] during May of 1980, do you have an opinion, to a
reasonable degree of medical certainty, as to her ability to
truth-tell on June 18, 1980, and June 19, 1980?" The psychi-
atrist responded that he had no opinion. The psychiatrist tes-
tified further "[t]hat without expert testimony, the jury
would not be likely to have the capability to understand the
meaning of those statements in the context of the question
that was asked."

The judge stated: "I'm not going to let this record go to
the jury, since it contains communications which are pro-
tected by the privilege, the statutory privilege. I would only
override the privilege, in the interests of justice, if it's helpful
to the jury. At this point, I see no basis for my concluding
that it would be helpful to the jury." The judge then asked
the psychiatrist the following questions: "Are you saying,
Doctor, that if the jury had the benefit of reading that entire
record and the statements contained therein when it ad-
dressed its responsibility of deciding whether [the complain-
ant] was telling the truth on the stand here . . . would the
ability to relate those statements contained in your report to
her truth-telling ability be beyond the ken of a jury made up
of laymen, non-experts?" The psychiatrist responded, "Yes,
your Honor. I think it would."

The judge stated, "I see no basis for permitting either this
witness's testimony, since he has no expert opinion with a
reasonable degree of medical certainty, nor do I see any basis
for allowing the report in, since the only evidence before me
is this expert, who tells me it's not going to help the jury in
its weighing of [the complainant's] testimony."

The defendant did not testify, and the defense rested with-
out presenting any witnesses.

We hold that the judge improperly excluded the evidence.
The defendant, in offering the report, intended to raise

doubts as to the complainant's ability to perceive the events of June 18, 1980. In order to be considered relevant, "the evidence must have rendered the desired inference more probable than it would have been without it." *Commonwealth* v. *Copeland*, 375 Mass. 438, 443 (1978). *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). Evidence that the complainant claimed to hear the voice of the defendant telling her to do things could have made it more likely, in the jury's view, that the complainant did not perceive the event accurately. The evidence could have been helpful for the jury to determine whether the complainant was telling the truth or whether she had imagined the entire incident. The evidence, then, met the threshold test of relevancy, in that it had a "rational tendency to prove an issue in the case," and the judge was mistaken in ruling that he had no basis for admitting it. *Commonwealth* v. *Chretien*, 383 Mass. 123, 136 (1981), quoting *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702 (1977). *Commonwealth* v. *Grieco*, 386 Mass. 484, 490 (1982). "Whether the evidence, once admitted, establishes the proposition for which it is offered is, of course, for the jury." *Id.* at 489, citing *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978).

Expert testimony regarding medical certainty was not necessary for the judge to make a determination of helpfulness to the jury. Relevance is a question of law for the judge, not a question of science for the expert. "Although there may be certain instances in which very technical medical language in a hospital record may be unintelligible to a jury without further explanation, that is not the situation before us." *Commonwealth* v. *Copeland, supra* at 442. "[I]n cases such as the present one, the rule to be applied is that hospital records containing facts relevant to medical history or treatment are admissible without need for, and despite the absence of, testimonial corroboration." *Id.* While expert testimony may have been admissible to explain further the statements contained in the report, the jury were not required to have an expert before them in order to understand the significance of the

words "she claims to hear the voice of her sister's boyfriend telling her to do things."

We conclude that the defendant suffered prejudice as a result of the judge's exclusion of the evidence. The Commonwealth's case depended almost entirely on the testimony of the complainant. Exclusion of the statement left the jury completely ignorant of the fact that six weeks prior to the incident the complainant had claimed to hear the voice of the defendant telling her to do things. "[T]he proffered evidence, if believed, might have had a significant impact . . . on the outcome of the trial." *Commonwealth* v. *Grieco, supra* at 491, quoting *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978), *S.C.*, 385 Mass. 733 (1982).

Because the judge excluded the evidence on relevance grounds, he did not address fully the constitutional issue.[2] On retrial, the judge should weigh carefully the defendant's confrontation rights against the statutory psychotherapist-patient privilege. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska*, 415 U.S. 308, 316 (1973). "When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." *Commonwealth* v. *Bohannon, supra* at 94. See *Commonwealth* v. *Clancy*, 402 Mass. 664, 669 (1988); *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 267-268 (1986).

2. *Preindictment delay.* The defendant argues that lack of diligence by police unfairly delayed the commencement of criminal proceedings against him, and that the judge erred in refusing to dismiss the indictment. The delay, according to the defendant, resulted in his first being informed of the charges against him four and one-half years after the incident, making it impossible for him to recall his whereabouts

[2]The Commonwealth does not argue that the defendant did not properly claim that the exclusion violated his confrontation rights under the Sixth Amendment to the United States Constitution.

at the time of the incident or to present alibi witnesses on his behalf.

We summarize the findings of fact of the judge. On June 19, 1980, the complainant's mother reported to the Fall River police department that her daughter, a sixteen year old in-patient at Corrigan, had been raped by the defendant on June 18, 1980. The Fall River police department, in the course of its investigation on June 19, 1980, was supplied with the name of the defendant and was informed that his address was 19 Elma Street in Providence, Rhode Island.

After unsuccessfully attempting to contact the defendant in Providence, the police on July 11, 1980, filed a written complaint against him in the Fall River District Court. Some time thereafter, on a date which was not established by the evidence, a fugitive arrest warrant was issued by the Fall River District Court. Providence police officers executed the warrant and arrested the defendant at his home on 35 Elma Street, Providence, on December 3, 1984.[3]

The defendant resided at 25 Elma Street in Providence for several months prior to June 19, 1980, until April, 1981, when he moved to 35 Elma Street. A publicly available directory for Providence listed the defendant as residing at 35 Elma Street during the years 1982, 1983, and 1985.[4] His unlisted telephone number was also included in those directory listings. During all times material to this case, the defendant had been employed as a carpenter for various contractors in Rhode Island and is identified in the records of the Rhode Island Carpenter's Health Fund as residing at 35 Elma Street in Providence.

In 1974 and 1979, the defendant appeared before the Rhode Island courts in criminal matters, and records of those proceedings indicate that the defendant resided at 19 Elma Street. On January 23, 1981, the defendant married a sister

---

[3]The defendant was arraigned on the District Court complaint in the Fall River District Court on December 3, 1984, at which time he pleaded not guilty. He was bound over to the Superior Court on April 4, 1985. An indictment was returned on June 11, 1985.

[4]The directory was not published in 1981 and 1984.

of the complainant. The complainant, at all times material to this case, has known the address of the defendant and has frequently visited him and his wife at 35 Elma Street. Between January, 1984, and March, 1984, the complainant resided at the home of the defendant and listed her residence as 35 Elma Street.

The judge found that the exercise of reasonable diligence by either the Fall River or the Providence police in all probability would have resulted in the defendant's being informed of the allegations against him shortly after the incident. However, the judge held that the defendant did not present sufficient evidence to meet his burden of proving that he is entitled to dismissal of the indictment. We agree with the judge's conclusions.

The defendant bears the heavy burden of showing that there was prejudice and that the "delay has been intentionally undertaken to gain a tactical advantage over the accused or has been incurred in reckless disregard of known risks to the putative defendant's ability to mount a defense." *Commonwealth* v. *Best*, 381 Mass. 472, 484 (1980), quoting *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 691 (1979). *Commonwealth* v. *Patten*, 401 Mass. 20, 21 (1987). *United States* v. *Lovasco*, 431 U.S. 783, 790 (1977).

The judge was correct in holding that the evidence presented does not support a finding that the police intentionally caused the delay to gain a tactical advantage. There was no evidence presented which would support an inference of intentional conduct. In addition, as the judge ruled, the defendant failed to present sufficient evidence to meet his burden of proving recklessness. The defendant did not offer any evidence concerning the activities of the police subsequent to the initial investigation in the case or any evidence as to when the arrest warrant was placed in the hands of the Providence police. Without any proof as to what investigation the

police actually undertook, the judge could not make a finding that the police acted recklessly.[5]

At any rate, Fayerweather's alleged inability to recall his whereabouts at the time of the incident does not constitute the "severe prejudice" required for the drastic remedy of dismissal of an indictment. *Commonwealth* v. *Best, supra* at 485 & n.16. Dimming of memories alone "is inadequate to trigger the protection of due process." *Commonwealth* v. *Imbruglia, supra* at 690. *Commonwealth* v. *Best, supra* at 486. *Commonwealth* v. *Horan,* 360 Mass. 739, 741 (1972).

The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial.

*So ordered.*

---

[5]The judge's finding that the police did not exercise reasonable diligence does not alone support a finding of recklessness. We have held that even a showing of negligent conduct on the part of the police is insufficient to establish a due process violation. *Commonwealth* v. *Imbruglia, supra* at 691.