MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 56
Docket:       Aro-16-569
Argued:       September 14, 2017
Decided:      April 26, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

GREGORY S. OLAH

SAUFLEY, C.J.

[¶1]  Gregory S. Olah appeals from a judgment of conviction of gross sexual assault of a person under the age of fourteen (Class A), 17-A M.R.S.A. § 253(1)(B) (Supp. 2002),[1] and unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2) (Supp. 2002),[2] entered by the court (Aroostook County, *Stewart, J.*) after a jury found him guilty.  He challenges the court's (*Hunter, J.*) decision to quash his subpoenas of mental health records of the alleged victim

---

[1]  Title 17-A M.R.S.A. § 253(1)(B) (Supp. 2002) was amended effective July 30, 2004, though only to modify syntax to accommodate an additional paragraph (C).  *See* P.L. 2003, ch. 711, § B-2 (codified at 17-A M.R.S. § 253(1)(B), (C) (2017)).

[2]  A new statute was enacted to replace former 17-A M.R.S.A. § 255 (Supp. 2002), effective January 31, 2003.  *See* P.L. 2001, ch. 383, §§ 22, 23 (codified as subsequently amended at 17-A M.R.S. § 255-A (2017)).  Although the indictment alleged that the crimes occurred in 2001 and the evidence showed conduct occurring in the autumn of 2003, Olah does not argue that he was charged under the wrong statute.  Moreover, in substance, current section 255-A(1)(E) is identical to former section 255(1)(C).

2

without first viewing the records *in camera*, the court's denial of his motion to suppress statements made to law enforcement, and the court's (*Stewart, J.*) denial of his motion for a judgment of acquittal. We discern no error in the court's rulings on either the motion to suppress or the motion for a judgment of acquittal, but we remand for the court to examine some or all of the requested mental health records *in camera*.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt. *See State v. Cummings*, 2017 ME 143, ¶ 3, 166 A.3d 996. In the autumn of 2003, Olah's friend's six-year-old daughter was sleeping in her bedroom in Presque Isle. She awoke to find that Olah had undressed her and was touching her genitals with his mouth. Later that day, Olah took her to play at a local park. Olah then took her to another friend's nearby home, where he bathed her and briefly rubbed a towel between her legs. After the bath, the two were in the living room when Olah removed his erect penis from his pants, had the girl come to him, grabbed her hand, and made her touch his penis.

[¶3] In early 2014, the girl, who was still a minor, told her counselor what had happened. The counselor reported the information to state authorities as a mandatory reporter. *See* 22 M.R.S. § 4011-A(1)(A)(22), (2) (2017).

[¶4] In September 2014, Olah was charged by criminal complaint with gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), and unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2). An indictment for the same charges was filed that November. The indictment alleged—based on the available evidence—that Olah had committed the crimes "[o]n or about between July 1, 2001 and September 30, 2001."[3]

[¶5] In June 2015, Olah moved to suppress incriminating statements he had made during a police interview. The court (*Hunter, J.*) held a hearing and denied the motion to suppress, determining that Olah had not been in custody when he made the statements and that he had spoken to the police voluntarily.

[¶6] Before trial, Olah moved for the production of the child's mental health records from the Aroostook Mental Health Center (AMHC) and the child's counselor, who was an employee of AMHC. He asserted in that motion that the records were not confidential or privileged because the child waived

---

[3] "[I]f the victim had not attained the age of 16 years at the time of the crime, a prosecution for . . . unlawful sexual contact . . . or gross sexual assault . . . may be commenced at any time." 17-A M.R.S. § 8(1) (2017).

4

any privilege by voluntarily disclosing the contents of her counseling when she spoke with law enforcement officers. *See* M.R. Evid. 510(a) ("A person who has a privilege under these rules waives the privilege if the person . . . while holding the privilege voluntarily discloses or consents to the disclosure of any significant part of the privileged matter."). He also asserted that the contents of the records would likely be admissible for impeachment purposes. The proposed subpoenas requested "[a]ll counseling records of [the child] and [the counselor] involving any discussion of sexual abuse."

[¶7] The court entered an order on January 27, 2016, in which it determined that Olah had met the threshold requirements of relevancy, admissibility, and specificity to authorize the issuance of subpoenas and directed that subpoenas be served. *See* M.R.U. Crim. P. 17A(f). After being served with a notice to produce records, AMHC and the counselor objected to the production of documents and moved to quash the subpoenas, asserting that the documents requested were, despite the mandatory report of child abuse, confidential by statute and could not be disclosed even for *in camera* review.[4]

---

[4] Neither AMHC nor the counselor asserted a claim of the privilege established in M.R. Evid. 503(b)(1) and (d)(2).

*See* 22 M.R.S. § 1711-C (2017);[5] 34-B M.R.S. § 1207 (2017).[6] Olah argued in opposition that the child had waived the confidentiality of the records through her own statements to law enforcement, that Rule 17A(f) allows the court to require the production of otherwise confidential material for *in camera* review and possible disclosure to the defendant, and that the materials can be used for impeachment.

[¶8] The court granted the motion to quash without having viewed the records *in camera*. It concluded that the child had not voluntarily waived confidentiality, either through her statements to law enforcement or through the mandated report of her counselor. The court distinguished the confidential records of the counselor from the child's statements to law enforcement, which were properly the subject of discovery and, to the extent appropriate pursuant to the Rules of Evidence, could be used at trial. It further stated that it was "not persuaded that its preliminary conclusion that the Defendant had met his threshold obligation to demonstrate relevance, admissibility and specificity necessarily leads to an obligation to produce the [counseling] records for *in*

---

[5] Recent amendments to 22 M.R.S. § 1711-C do not affect the issues raised on appeal. *See* P.L. 2017, ch. 203, §§ 2-4 (effective Nov. 1, 2017) (codified at 22 M.R.S. § 1711-C(6)(S)-(U) (2017)).

[6] Recent amendments to 34-B M.R.S. § 1207(1) do not affect the issues raised on appeal. *See, e.g.*, P.L. 2017, ch. 147, §§ 6, 7 (effective June 8, 2017) (codified at 34-B M.R.S. § 1207(1)(B) (2017)).

*camera* review." The court reasoned that Rule 17A anticipates objections to the subpoena and that the court must then consider "whether the claimed privilege should be honored or not." Upon considering that question, the court quashed the subpoenas as mere "fishing expeditions," citing *State v. Watson*, 1999 ME 41, ¶¶ 6, 7, 726 A.2d 214, and *State v. Dube*, 2014 ME 43, ¶¶ 8-10, 87 A.3d 1219.

[¶9] In November 2016, almost two years after the indictment,[7] the court (*Stewart, J.*) held a two-day jury trial. The evidence was conflicting regarding the date when Olah had been present at the girl's home. At the close of evidence, Olah moved for a judgment of acquittal on the gross sexual assault charge because the alleged victim had testified that her eyes were closed when she felt the mouth on her genitals, and she therefore could not sufficiently identify Olah as the person who had committed that crime. The court denied the motion. Olah did not testify and offered no additional evidence.

[¶10] In its closing argument, the State argued that the events probably happened when the alleged victim was six years old in fall 2003. Olah argued that the indictment's allegation of events in 2001 could not be proved and that the discrepancies cast reasonable doubt on whether the events happened at all.

---

[7] The record does not contain a speedy trial demand, and it appears that Olah was not incarcerated while awaiting trial.

[¶11]  The court gave its final instructions to the jury, which returned guilty verdicts on both counts.  Olah then moved for a judgment of acquittal on the ground that the evidence could not establish the identity of the person who committed the assault in the bedroom and that the evidence presented and argued by the State was outside the scope of the indictment, which prejudiced his ability to prepare a defense.

[¶12]  The court heard arguments on Olah's motion for a judgment of acquittal on December 2, 2016, and denied the motion with respect to identification because the girl testified about identifying features of her assailant, including the description of his facial hair, that were consistent with only one person who was in the house at the time—Olah.  The court further concluded that there was sufficient evidence to support each element of each count.  The court also denied the motion as to the date discrepancy because Olah, without objecting, used that discrepancy during his closing argument to try to discredit the State's case and undermine witness credibility; the date discrepancy did not affect the statute of limitations or any elements of the crime, including the element of the age range of the victim; and there was no demonstration of prejudice.

8

[¶13]  The court then held a sentencing hearing.  On the gross sexual assault count, the court sentenced Olah to fourteen years in prison, all but seven years suspended, and six years of probation with conditions limiting his contact with children.  For the unlawful sexual contact, the court sentenced Olah to forty-two months of incarceration to be served concurrently with the sentence for the gross sexual assault.  The court also ordered Olah to pay $50 to the Victims' Compensation Fund.

[¶14]  Olah timely appealed and applied for review of his sentence. 15 M.R.S. §§ 2115, 2151 (2017); M.R. App. P. 2.[8]  The Sentence Review Panel denied Olah leave to appeal from his sentence, *see* 15 M.R.S. § 2152 (2017), and the appeal from the judgment of conviction is now before us.  *See State v. Olah*, No. SRP-16-568 (Me. Sent. Rev. Panel Feb. 27, 2017).

## II.  DISCUSSION

[¶15]  On the entire record presented, we conclude, without further discussion, that (1) the court (*Hunter, J.*) did not err in its findings or in its application of the law in denying Olah's motion to suppress,[9] and (2) the court

---

[8]  The restyled Maine Rules of Appellate Procedure were not yet in effect at the time that Olah filed his notice of appeal.  *See* M.R. App. P. 1 (providing that the restyled Rules "apply to all appeals in which the notice of appeal is filed on or after September 1, 2017").

[9]  *See State v. Hunt*, 2016 ME 172, ¶ 17, 151 A.3d 911; *State v. Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984; *State v. Lowe*, 2013 ME 92, ¶ 13, 81 A.3d 360; *State v. Jones*, 2012 ME 126, ¶¶ 21, 22, 55

(*Stewart, J.*) did not err in denying Olah's motion for a judgment of acquittal on the record before it.[10]  We write to address the court's (*Hunter, J.*) application of Rule 17A of the Maine Rules of Unified Criminal Procedure and its decision to quash the subpoenas of the child's mental health records.

[¶16]  Olah first contends that those mental health records are not confidential because the child waived their confidentiality by speaking about the content of her counseling sessions with law enforcement present.  Olah further argues that the court should have reviewed the records from AMHC *in camera* both to protect Olah's constitutional right to present a complete defense and to be consistent with the court's earlier determination that Olah had made a preliminary showing that the records could be subpoenaed.  *See* M.R.U. Crim. P. 17A(f).

---

A.3d 432; *State v. Nadeau*, 2010 ME 71, ¶¶ 6, 57-58, 1 A.3d 445; *State v. Theriault*, 425 A.2d 986, 990 (Me. 1981); *see also United States v. Jacques*, 744 F.3d 804, 812 (1st Cir. 2014).

   [10]  The evidence of record fully supports jury findings that Olah's mouth made direct contact with the girl's genitals when the girl was under the age of fourteen, *see* 17-A M.R.S.A. §§ 251(1)(C)(1), 253(1)(B) (Supp. 2002), and that he touched her genitals, and had her touch his, for the purpose of arousing or gratifying his sexual desire when she was under the age of fourteen, *see* 17-A M.R.S.A. §§ 251(1)(D), 255(1)(C) (Supp. 2002); *see also* 17-A M.R.S. § 255-A(1)(E) (2017); *State v. Adams*, 2015 ME 30, ¶ 19, 113 A.3d 583.  Any discrepancy between the dates stated in the indictment and the evidence produced at trial is not fatal to the conviction.  *See State v. Lyon*, 2016 ME 22, ¶ 8, 131 A.3d 918; *State v. Standring*, 2008 ME 188, ¶ 14, 960 A.2d 1210.

A.    Standards of Review

[¶17]  We review a ruling on a motion to quash a subpoena for an abuse of discretion.  *See State v. Marroquin-Aldana*, 2014 ME 47, ¶ 33, 89 A.3d 519. The decision to exclude testimony based on the assertion of confidentiality or a privilege rests in the sound discretion of the court.  *See Watson*, 1999 ME 41, ¶ 5, 726 A.2d 214.  Legal conclusions, including conclusions on constitutional due process issues, are reviewed de novo.  *Dube*, 2014 ME 43, ¶ 8, 87 A.3d 1219; *State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432.

B.    Confidentiality Statutes, M.R.U. Crim. P. 17A(f), and Due Process

[¶18]  In general, "[a]n individual's health care information is confidential and may not be disclosed other than to the individual by the health care practitioner or facility."  22 M.R.S. § 1711-C(2); *see also* 34-B M.R.S. §§ 1001(2), 1207(1) (2017) (providing that, with some exceptions, "[a]ll . . . medical and administrative records . . . pertaining to any client [receiving services from an entity licensed to provide services falling under the jurisdiction of the Department of Health and Human Services] shall be kept confidential and may not be disclosed by any person").  A mental health professional must, however, "immediately report or cause a report to be made to the [Department of Health and Human Services] when the person knows or has reasonable cause to

suspect that a child has been or is likely to be abused or neglected." 22 M.R.S. § 4011-A(1)(A)(22). In addition, "[w]hen, while acting in a professional capacity, any person required to report under this section knows or has reasonable cause to suspect that a child has been abused . . . by a person not responsible for the child . . . the person immediately shall report or cause a report to be made to the appropriate district attorney's office." *Id.* § 4011-A(2).

1.      Waiver of Confidentiality

[¶19]  The court correctly determined that neither the mandated report to law enforcement by the counselor nor the alleged victim's answers to questions posed by law enforcement constituted a waiver of the confidentiality of the victim's counseling records.

[¶20]  A mandated report of suspected abuse by a provider does not create a waiver of the confidentiality of records by a patient.  *Cf. id.* § 1711-C(14) (prohibiting as void against public policy any agreement to waive the provisions of section 1711-C).  Because the provider must disclose the information about suspected abuse whether or not the patient consents, a patient's voluntary waiver of the confidentiality of her records cannot be inferred from a provider's mandated report.  *See id.* § 4011-A(1)(A)(22), (2). Nor does the mandatory report require the automatic disclosure of patient

mental health records to a defendant in a criminal proceeding. *See generally id.* § 1711-C(6) (listing the limited situations in which medical information may or must be disclosed without patient authorization).

[¶21]  Addressing Olah's argument that the alleged victim herself took action that directly waived the confidentiality of the counseling records by answering questions from law enforcement or otherwise, we are unpersuaded. Nothing in the record before us demonstrates that, when speaking with police after her counselor made the report, the alleged victim executed any written consent for the records' disclosure, either on her own or through her parents acting on her behalf. *See* 34-B M.R.S § 1207(1)(A) ("A client, his legal guardian, if any, or, if he is a minor, his parent or legal guardian may give his informed written consent to the disclosure of information."). Thus, the court did not err in determining that the records remained confidential and that confidentiality had not been waived or disclosure authorized by the alleged victim.[11]

---

[11] Because we are addressing only the statutory confidentiality provision that the mental health provider asserted, the rule respecting the waiver of a rule-based privilege by a patient through voluntary disclosure in M.R. Evid. 510 is inapposite. *See* M.R. Evid. 510(a) ("A person *who has a privilege under these rules* waives the privilege if the person or the person's predecessor while holding the privilege voluntarily discloses or consents to the disclosure of any significant part of the privileged matter." (emphasis added)).

2.      Disclosure Required by the Due Process Clause

[¶22]    A court may, however, order the disclosure of otherwise confidential health care information if that disclosure is required as a matter of law.  *See* 22 M.R.S. § 1711-C(6)(F-1) (allowing the disclosure of otherwise confidential health care information "[a]s directed by order of a court"); M.R.U. Crim. P. 17A.  "[T]he majority of jurisdictions in the United States have determined that a criminal defendant's right, provided certain requirements are met, may supersede a witness's rights or statutory privilege."  *State v. Blackwell*, 801 S.E.2d 713, 726 & n.19 (S.C. 2017) (citing cases).  In criminal proceedings, upon a preliminary showing by the defendant, a court has the authority to review the otherwise confidential records *in camera* to determine whether the records contain exculpatory evidence, including evidence directly undermining witness credibility, that must be provided to the defendant to ensure compliance with the fundamental right to due process.  *See* M.R.U. Crim. P. 17A; *see also* U.S. Const. amend. XIV, § 1; *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 60 (1987); 22 M.R.S. § 1711-C(6)(F-1).

[¶23]    Rule 17A of the Maine Rules of Unified Criminal Procedure provides the process by which a defendant may seek disclosure of privileged or confidential records.  The rule allows a party who is aware of the potential for

an assertion of a privilege or of confidentiality to move in limine for a determination before serving a subpoena. M.R.U. Crim. P. 17A(f). In that motion, a party must set forth the following:

> (1) the particular documents sought by the subpoena with a reasonable degree of specificity of the information contained therein; (2) the efforts made by the moving party in procuring the information contained in the requested documents by other means; (3) that the moving party cannot properly prepare for trial without such production of the documents; and (4) that the requested information is likely to be admissible at trial. The motion in limine shall be accompanied by a copy of the yet unserved subpoena.

*Id.* The court must, upon receipt of the motion, "make a preliminary determination that the moving party has sufficiently set forth the relevancy, admissibility, and specificity of the requested documents." *Id.* If the court determines that the minimal threshold information has been provided, the court "shall direct the clerk to set the matter for hearing and issue a notice of hearing." *Id.* After the clerk issues the notice, the subpoena must be served. *Id.* "Upon receipt of the subpoena, the motion and the notice, the subpoenaed individual or entity to whom the subpoena is directed shall either submit the documentary evidence subject to the subpoena for *in camera* review by the court or provide in writing reasons for the failure to submit the documentary evidence for *in camera* review before the date of the hearing." *Id.* "After the

hearing, the court may issue any order necessary to protect any party's or nonparty's privileges, confidentiality protections, or privacy protections under federal law, Maine law, or the Maine Rules of Evidence." *Id.*

[¶24]  The State is correct that Rule 17A(f) is not a discovery device. *See Marroquin-Aldana*, 2014 ME 47, ¶ 37, 89 A.3d 519.  The rule does, however, provide a means for a defendant to seek otherwise privileged or confidential information that is favorable to the defense and material to the alleged crimes so that the defendant has the opportunity to present a complete defense. *See* M.R.U. Crim. P. 17A(f); *see also* U.S. Const. amend. XIV, § 1; *Ritchie*, 480 U.S. at 56, 60.

[¶25]  We address, then, the task of the court when a defendant moves for it to review records *in camera*.  At least with respect to the otherwise confidential documents contained in the materials held by prosecutors and state agencies, the Supreme Court of the United States has required that courts, to ensure that a defendant is afforded due process, review the records to determine whether any portions of the requested records must be disclosed because they are "both favorable to the accused and material to guilt or punishment."  *Ritchie*, 480 U.S. at 57 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)); *see also State v. Twardus*, 2013 ME 74, ¶ 31, 72 A.3d 523; *Dunn v.*

16

*Commonwealth*, 360 S.W.3d 751, 767-68 (Ky. 2012) ("Exculpatory evidence is . . . evidence favorable to the accused and material to guilt or punishment, including impeachment evidence." (quotation marks omitted)).

[¶26]  Appellate courts review a trial court's decision to maintain the confidentiality of such records to determine whether the court abused its discretion in quashing the subpoena as to any portions of the records that were exculpatory, that is, "favorable to the accused and material to guilt or punishment."  *Ritchie*, 480 U.S. at 57.  That materiality is established if the disclosure of those portions of the records "'probably would have changed the outcome of [the] trial.'"  *State v. Perry*, 552 A.2d 545, 547 (Me. 1989) (quoting *Ritchie*, 480 U.S. at 58); *see also Twardus*, 2013 ME 74, ¶ 32, 72 A.3d 523.

[¶27]  Some courts have drawn a distinction between state actors' records and private providers' records.  *See, e.g.*, *State v. Pinder*, 678 So. 2d 410, 414-17 (Fla. Dist. Ct. App. 1996).  Many courts, however, have applied the same standards applicable to government records to determine whether otherwise confidential records of private mental health providers must be disclosed to a defendant.  *See, e.g.*, *People v. McCray*, 12 N.E.3d 1079, 1081-83 (N.Y. 2014); *State v. Green*, 646 N.W.2d 298, 309 (Wis. 2002) (requiring a court conducting an *in camera* review of private counseling records to determine "whether the

records contain any relevant information that is material to the defense of the accused" (emphasis omitted) (quotation marks omitted));[12] *see also State v. Lynch*, 885 N.W.2d 89, 121-22 & n.11 (Wis. 2016) (Abrahamson & A.W. Bradley, JJ., concurring in part, dissenting in part) (citing cases).

[¶28]  We agree that the standard applied should be the same regardless of whether the confidential records are held by the government or a private entity.  Neither the alleged victim's interest in patient privacy nor the defendant's interest in disclosure will vary depending upon whether a public or private entity holds the medical or mental health records.  Moreover, Maine's statutes provide a framework that imposes public obligations on private mental health providers; although a private mental health provider may not be a state actor, such a provider is licensed by the State and has a legislatively imposed obligation to report child abuse.  *See* 22 M.R.S. § 4011-A(1)(A)(22), (2).  The confidentiality statutes, which contain the exception to confidentiality for materials ordered disclosed by a court, also impose obligations on private mental health providers, including as necessary to afford a defendant facing

---

[12]  Although the Wisconsin Supreme Court recently considered overruling *Green*, the court was divided on the question, and therefore *Green* remains the law in Wisconsin.  *See State v. Lynch*, 885 N.W.2d 89, 90-91 & n.9 (Wis. 2016) (Gableman, J., authoring "lead" opinion).

criminal charges access to any exculpatory materials. *See* 22 M.R.S. § 1711-C(6)(F-1); 34-B M.R.S. § 1207(1)(C); *see also Ritchie*, 480 U.S. at 57.

[¶29] We join the many courts that apply the *Ritchie* test to determine whether a defendant, to have a fair trial with the opportunity to present a full defense, must be allowed access to specific portions of a State witness's mental health records held by a private entity even if the records are otherwise confidential. *See Lynch*, 885 N.W.2d at 122 n.11 (Abrahamson & A.W. Bradley, JJ., concurring in part, dissenting in part) (citing cases). Thus, as in *Ritchie* where the records were created by state entities, defendants' due process interests make it necessary for courts to review *in camera* specified mental health records held by private providers and determine whether any portions of those records are "both favorable to the accused and material to guilt or punishment." *Ritchie*, 480 U.S. at 57; *see id.* at 60.

[¶30] In considering the interests at stake during an *in camera* review, a court must weigh the defendant's interest in learning of potentially exculpatory evidence—and the public interest in the truth-seeking function of the courts—against the State's and alleged victim's interests in preserving patient privacy and the State's interest in receiving reports of possible crimes and abuse without subjecting the alleged victim to the overbroad release of confidential

information in a public proceeding. *See Ritchie*, 480 U.S. at 57-58; *see also People v. Bean*, 560 N.E.2d 258, 274 (Ill. 1990) (stating that, after *in camera* review, a court will order the disclosure of "only those portions [of a witness's mental health records] that are relevant when that relevance is not outweighed by other factors"); *McCray*, 12 N.E.3d at 1081 (reviewing "whether the trial court abused its discretion in finding defendant's interest in obtaining the records to be outweighed by the complainant's interest in confidentiality," with the defendant's interest "outweighed only if there was no reasonable possibility that the withheld materials would lead to his acquittal"); *State v. Rehkop*, 908 A.2d 488, 494 (Vt. 2006) ("When relevant evidence is excluded from the trial process for some purpose other than enhancing the truth-seeking function, the danger of convicting the innocent increases.").

[¶31]  Balancing these interests, courts may determine it necessary to order the disclosure of a privately or governmentally held mental health record when, for example, the patient stated that the charged crimes did not happen, *cf. State v. Johnson*, 102 A.3d 295, 309-10 (Md. 2014) (summarizing cases in which *in camera* review was necessary due to other evidence of recantation or inconsistent statements); the alleged victim claimed to have recovered previously "blocked" memories of the specifically alleged abuse many years

after the abuse was alleged to have occurred, *see Commonwealth v. T.J.W.*, 114 A.3d 1098, 1100, 1103-05 (Pa. Super. Ct. 2015); or the record contains evidence that an alleged victim suffered from hallucinations, *see Commonwealth v. Fayerweather*, 546 N.E.2d 345, 347 (Mass. 1989).

[¶32]  If, however, a court "could reasonably think there [is] no more than a remote possibility that disclosure of the records . . . would lead to defendant's acquittal" because the information in the records is inculpatory, cumulative, or "of little if any relevance to the case," the court acts "within its discretion in finding the records' relevance to be outweighed by the complainant's legitimate interest in confidentiality."  *McCray*, 12 N.E.3d at 1081, 1083.  Ultimately, a court must order disclosure if there is a reasonable probability that the evidence in the otherwise confidential records could change the outcome of the trial.  *See Ritchie*, 480 U.S. at 57-58.

C.    Review of the Motion Court's Application of the Statutes and Rule

[¶33]  Here, the court found that Olah made the preliminary showing of "relevancy, admissibility, and specificity," M.R.U. Crim. P. 17A(f), necessary to proceed to issue the subpoena, but it granted the motion to quash without undertaking an *in camera* review, concluding that Olah's efforts to obtain the records amounted to a prohibited "fishing expedition," *Watson*, 1999 ME 41,

¶ 7, 726 A.2d 214. In different circumstances, we affirmed the quashing of a subpoena because the defendant had only speculated that the records could contain evidence that his daughter was fabricating allegations of sexual assault because she did not like his wife and wanted to leave his household. *Id.* ¶¶ 2-3, 7. As a court in another jurisdiction has held, "'The vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's anticipated trial testimony does not provide a sufficient basis to justify ignoring the victim's right to rely upon her statutory privilege.'"[13] *People v. Foggy*, 521 N.E.2d 86, 92 (Ill. 1988) (quoting *People v. District Court*, 719 P.2d 722, 726 (Colo. 1986)).

[¶34]   Olah seeks records that are likely to contain at least some information about the child's allegations of sexual assault that led directly to the charges at issue here. Although those records are almost certain to contain inculpatory information that led to the report of suspected child abuse, they may also contain exculpatory information about, for instance, the child's level of certainty in identifying the person who touched her with his mouth in her bedroom. Because information about the specific charged crimes likely exists

---

[13] Notably, in *People v. Foggy*, the statute included a provision governing the confidentiality of records. 521 N.E.2d 86, 87-88 (Ill. 1988).

in the specified records, the circumstances differ from the situation in *Marroquin-Aldana*, where the subpoena sought from the attorney of the victim's mother the mother's entire immigration file, particularly her U visa application, but did not state what specific information the application would contain that would be relevant to Marroquin-Aldana's defense. 2014 ME 47, ¶¶ 2, 36, 37, 89 A.3d 519. Similarly, although the exact contents of the records subpoenaed here are not known, this matter is unlike the situation in *Dube*, where the counseling records predated the charged crimes and the defendant conceded that it was impossible to know what was in the records. 2014 ME 43, ¶ 10 & n.3, 87 A.3d 1219.

[¶35]  Because the review must by definition be focused on the specific charges against the defendant and the potential for exculpatory information, a court is not required to review all counseling records ever created with respect to an alleged victim; a broad "fishing expedition" will not be allowed because an alleged victim has a strong privacy interest in the confidentiality of records that do not pertain to the allegations against the defendant. *Watson*, 1999 ME 41, ¶ 7, 726 A.2d 214; *see Dube*, 2014 ME 43, ¶ 10 & n.3, 87 A.3d 1219.

[¶36]  In the matter before us, however, it is relatively certain that the records contain some evidence concerning the exact crimes charged, and the

identity of the alleged perpetrator was directly at issue at trial. This is a circumstance in which, based on principles of due process, the court must proceed with an *in camera* review. *See Ritchie*, 480 U.S. at 60 ("We find that Ritchie's interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the [Children and Youth Services] files be submitted only to the trial court for *in camera* review."); *see also State v. Blake*, 63 P.3d 56, 62 (Utah 2002) (holding that *in camera* review "represents a satisfactory method of balancing the interests of privacy and full reporting of crime with defendants' ability to present the best case at trial"). Thus, the court erred in failing to undertake an *in camera* review of the records before the trial.

## III. REMEDY

[¶37] The circumstances of this ruling are unusual. To assure the protection of Olah's right to access exculpatory evidence, we must remand for the trial court to undertake the *in camera* review.

[¶38] Recognizing that the review may not lead to the release of *any* records, however, and acknowledging that an otherwise fair trial has been completed, we do not vacate the judgment of conviction at this point. Instead, we remand the matter for the court to order AMHC to produce the relevant counseling records to the court. The court will then conduct the required *in*

24

*camera* review. *See* M.R.U. Crim. P. 17A(f). The court will review those records to determine whether any portions of them are favorable to Olah and material to his guilt, such that his interest in the disclosure of those portions of the records and the State's interest in the truth-seeking function of the courts outweigh the countervailing interests in patient confidentiality and the reporting of crimes. *See Ritchie*, 480 U.S. at 57-58; *Bean*, 560 N.E.2d at 274; *McCray*, 12 N.E.3d at 1081. The materiality of the records to Olah's guilt depends on whether there is a reasonable probability that the release to Olah of any portions of the records would have changed the outcome of a trial in Olah's favor.[14] *See Ritchie*, 480 U.S. at 57-58.

[¶39] If the court does not order the release of any records, the verdict and sentence will be complete and final. Olah may appeal the court's final denial of access to the records.

[¶40] In the event that the court does order the release of any of the counseling records after its *in camera* review, the court will have, by definition, undertaken the application of the legal standard to the release of the counseling records in the absence of any advocacy from the parties about those particular

---

[14] Because the records must be reviewed in the context of the trial record, the matter must be remanded to the jurist who presided over the trial. *See, e.g., Pennsylvania v. Ritchie*, 480 U.S. 39, 61 (1987).

documents. Accordingly, following the release of any of the counseling records, the parties will have an opportunity to review the selected records and provide additional advocacy. Specifically, Olah may move for a new trial after the State and Olah's counsel have had an opportunity to review those records. *See* M.R.U. Crim. P. 33. The court will then be called upon to determine whether there is a reasonable probability that the availability of the now-released records in advance of trial would have changed the outcome of the trial.

The entry is:

> Order quashing subpoenas vacated. Remanded for the production and *in camera* review of certain counseling records, consistent with this opinion, and any further proceedings determined to be necessary. In all other respects, judgment affirmed on the record before us.

---

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant Gregory S. Olah

Todd R. Collins, District Attorney, and Carrie L. Linthicum, Dep. Dist. Atty. (orally), Prosecutorial District 8, Presque Isle, for appellee State of Maine

Aroostook County Superior Court docket number CR-2014-437
FOR CLERK REFERENCE ONLY